T.C. Memo. 2014-120

UNITED STATES TAX COURT

JACKIE H. ROBINSON AND LOLITA I. ROBINSON, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 248-11.                              Filed June 16, 2014.

Jackie H. Robinson and Lolita I. Robinson, for themselves.

<u>Erin R. Hines</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, <u>Judge</u>:   Pursuant to section 6212,[1] the Internal Revenue

Service ("IRS") issued petitioners Jackie and Lolita Robinson a statutory notice of

---

[1]Unless otherwise indicated, all section reference to the Internal Revenue
Code of 1986 (26 U.S.C., "the Code"), as in effect for the tax years in issue, and
all Rule references are to the Tax Court Rules of Practice and Procedure.  Some of
the amounts stated in this opinion have been rounded.

**[\*2]** deficiency on October 7, 2010, for the Robinsons' 2007 and 2008 tax years. In the notice the IRS determined that the Robinsons had deficiencies in tax of $35,340 for 2007 and $6,423 for 2008, and that they are liable for corresponding accuracy-related penalties of $7,028 and $1,285.[2] This case arises from the Robinsons' timely petition for redetermination of the tax and penalties in the notice. At the time they filed their petition, they resided in Virginia.

After concessions by the parties, the issues to be decided are: (1) whether the Robinsons are entitled to loss deductions claimed on their Schedules E, "Supplemental Income and Loss", for two rental properties (we hold they are not);

---

[2]In an "Amendment to Answer", the Commissioner asserted additional adjustments that would increase those liabilities. The amendment disputed the loss generated during the 2008 tax year for Schedule E activities related to the property referred to herein as "the Eagle Beak house" and disputed whether Mrs. Robinson "correctly characterized her income on Schedule C as a separate trade or business and whether she was entitled to the additional Schedule C expenses claimed for 2007 and 2008." Because these matters were raised timely before trial, the Commissioner is permitted to make these contentions; but since they were not raised in the statutory notice of deficiency, the Commissioner bears the burden of proof on them. See Rule 142(a)(1). However, we do not entertain issues raised by the parties for the first time after trial. In his post-trial briefs, the Commissioner attempts to recharacterize gross receipts from Mrs. Robinson's Schedule C, "Profit or Loss From Business", as wage income and thereby to assert liability for employment taxes. Similarly, in their post-trial briefs the Robinsons assert for the first time that Mrs. Robinson understated the expenses of her S corporation Annandale Play-Care, Inc. ("APC"), by failing to take into account credit card balances the Robinsons paid on APC's behalf. These arguments are untimely, and therefore we will not address them. See Graham v. Commissioner, 79 T.C. 415, 423 (1982).

[*3] (2) whether Mrs. Robinson conducted an active accounting trade or business (we hold she did not); (3) whether the Robinsons may deduct certain expenses claimed on their Schedules C, as unreimbursed employee expenses (we hold that they may not, and also that they may not deduct them on Schedule A); (4) whether the Robinsons may deduct mileage expenses as unreimbursed employee expenses on their Schedules A, "Itemized Deductions", (we hold that they may not); (5) whether on APC's tax returns Mrs. Robinson over-reported the gross receipts of APC by mischaracterizing capital contributions as gross receipts (we hold that she did not); and (6) whether the Robinsons are liable for section 6662 accuracy-related penalties (we hold that they are).

## FINDINGS OF FACT

I.    Background

Mr. Robinson earned a bachelor's degree from Rutgers University, is (and was during the years at issue) a certified public accountant, and had certified internal auditor ("CIA") and certified fraud examiner ("CFE") certificates. He worked for the U.S. Army Audit Agency for approximately 28 years. Mrs. Robinson earned a bachelor's degree in business administration from Howard University and a master's degree from Antioch University, and she holds CIA and CFE certificates. After spending approximately 7 years as an auditor for the U.S.

[*4] Army Audit Agency, she worked for the Securities and Exchange Commission for approximately 15 years.

During the years at issue, Mr. and Mrs. Robinson resided in a house on Heron Way in Woodbridge, Virginia (the "Heron Way house"). They paid utilities, real estate taxes, and mortgage interest in connection with that house. Mrs. Robinson used one room in the Heron Way house as an office (discussed below). Of the house's total area of 3,600 square feet, the room she used as an office was 120 square feet (i.e., 3.33% of the total).

## II.    Real estate activities

In 2007 and 2008, the Robinsons owned two real properties (in addition to the Heron Way house) as to which there are disputes in this case.

### A.    The Magnolia house

The Robinsons owned a house (their former residence) in Magnolia, New Jersey (the "Magnolia house"). The Magnolia house is a 170-mile drive from the Heron Way house. In 2007 and 2008, Mr. Robinson frequently gambled in Atlantic City, New Jersey. We take judicial notice of the fact that Atlantic City is about a 220-mile drive from the Heron Way house and is about a 54-mile drive from the Magnolia house. The Magnolia house is essentially on the way from the Robinsons' Heron Way house to Atlantic City. Stopping by the Magnolia house

[*5] added only about three miles to Mr. Robinsons's drive to Atlantic City. Mr. Robinson did not sleep in the Magnolia house on these trips to Atlantic City; rather, he usually stayed in casino hotels in Atlantic City.

On some occasions, to an extent we cannot quantify, Mr. Robinson stopped by the Magnolia house on his gambling trips and performed some work at the house. This work was part of a multi-year, intermittent project of rehabilitating or renovating the house. However, the principal reason for Mr. Robinson's trips to New Jersey was to gamble; and we find that he did not make work stops with the frequency or duration that he claims.

In addition to travel expenses, the Robinsons allege that they incurred (and they claimed as deductions on their returns) other expenses related to the Magnolia house--i.e., "Auto and travel", "Insurance", "Mortgage interest paid to banks, etc.", "Supplies", "Taxes", "Utilities", "Cleaning and maintenance", and (duplicatively) "Maintenance". The Robinsons provided little or no credible documentation of the fact of these expenditures or of their business purpose; but since the Commissioner did not contest substantiation of the expenditures, we assume the expenditures were incurred as alleged.

The Robinsons rented out the Magnolia house from 1995 through 1999 and again in December 2009; but the property was not held out for rent from 1999

**[*6]** until 2009, a 10-year period that includes both tax years at issue.

Consequently, the Robinsons received no rent from the property in 2007 or 2008.

Mr. Robinson's efforts to sell the property during 2007 and 2008 consisted of his

contacting two commercial home investors via the Internet. We find that in 2007

and 2008 the Robinsons did not hold the Magnolia house for the production of

income and did not engage in any for-profit activity to which the Magnolia house

was connected.[3]

B.    The Eagle Beak house

In November 2007 the Robinsons' daughter Vera Vaughn attempted to

purchase a house on Eagle Beak Circle in Woodbridge, Virginia (the "Eagle Beak

house"), but could not obtain a loan. Mrs. Robinson was able to obtain a loan for

the purchase. At the closing Mrs. Robinson and Ms. Vaughn were listed as co-

purchasers, and both their names appear on the deed with right of survivorship.

The right of survivorship was deliberate, since it was their intention that

Ms. Vaughn would own the house in the event of Mrs. Robinson's death. Mrs.

Robinson also testified that the Robinsons intended to occupy the house "as a

---

[3]Because this finding is sufficient to resolve the issue of the losses from the Magnolia house, we do not address the additional issue of whether the expenditures were nondeductible capital expenditures rather than deductible "ordinary and necessary" expenses.

[*7] retirement home." The rental income the Robinsons reported on this property was paid to them by their daughter, Ms. Vaughn. We find that Mrs. Robinson participated in the purchase of the Eagle Beak house not as part of any rental business but as an accommodation to their daughter and as an estate planning device. We find that in 2007 and 2008 the Robinsons did not hold the Eagle Beak house for the production of income.

III.    Annandale Play-Care, Inc.

A.    Mrs. Robinson's work for APC

APC is an S corporation owned 40% by Mrs. Robinson and 60% by her daughter Vera Vaughn. Mrs. Robinson is an officer (i.e., corporate secretary and treasurer) and a director of APC. APC's bylaws made her responsible, as treasurer, for various financial functions.[4] She performed various tasks for APC: laundry, teaching, procurement of supplies, payroll and tax deposits, the preparation of tax returns, preparing an annual budget, financial services, and dealing with repairmen and salespeople. APC paid her $8,500 in 2007 and $11,143 in 2008 (which, as is discussed below, she reported on her Schedules C).

---

[4]Article V, section 5, of the bylaws made Mrs. Robinson responsible, as treasurer, "for all funds, securities, receipts or disbursements of the Corporation" and responsible to "deposit, or cause to be deposited, in the name of the Corporation, all monies" and to "perform all the duties ordinarily incident to the offices of a Treasurer of a corporation".

[*8] Mrs. Robinson admits that she was an employee of APC--i.e., when she served as a teacher--but she contends that she was "an independent contractor when she performed accounting services".[5]  Although she characterized 100% of her compensation from APC as revenue of her "accounting" business, we find that in fact almost all of her work for APC was for clearly non-accounting work--i.e., teaching, laundry, and procurement of supplies[6]--and that her APC compensation was wages for her employment there.  Even her tasks most plausibly characterized as "accounting"--i.e., payroll and tax deposits, the preparation of tax returns, preparing an annual budget, and financial services--are just as plausibly characterized as functions of her role as treasurer, and the bylaws of the corporation effectively ascribe those tasks to that role.  There is no

---

[5]Mrs. Robinson implicitly characterized her APC work as employment when she claimed APC-related travel as an "unreimbursed employee business expense" on Schedules A of her returns, and she is identified as an APC "employee" on a stipulated list of APC employees.  The Robinsons' pretrial memorandum contends that Mrs. Robinson "performed services in 3 different capacities: (1) as an employee, when she served as a substitute teacher, (2) as an officer, when she performed the duties of Secretary and Treasurer, and (3) as an independent contractor when she performed accounting services."

[6]On her list of 2007 trips yielding deductible mileage, she gives for every day of the year (including weekends and holidays) an entry in which her "employee duties" are listed as "afternoon teacher".  On an equivalent list for 2008, only 18 days have an entry that includes "substitute teacher", but the list is dominated by entries for "supplies", "maintenance", and "cleaning".

[*9] contemporaneous corroboration for any distinction being drawn between the supposed categories of Mrs. Robinson's work for APC, and there is no evidence that APC distinctly retained her as an independent contractor to perform accounting work. We find that she was an employee of APC, not an independent contractor.

### B. Use of the home office

Mrs. Robinson had no office space at APC that was suitable for the fraction of her APC activities that consisted of desk work, and she therefore used her home office, for the convenience of APC. However, she did not use this home office exclusively for her APC work but also used it for other purposes, such as to prepare tax returns for her relatives.

### C. Use of vehicles

In 2007 and 2008, Mrs. Robinson drove her car in connection with her work at APC. However, under the applicable standard of proof (described below), we are unable to quantify the miles she drove, and we find that the miles she did drive were for commuting between her home and her place of business, or were for personal trips to the bank, the grocery store, and the like. We do not find any non-personal business travel demonstrated by the evidence.

**[\*10]**  IV.   Mrs. Robinson's "accounting" activity

Mrs. Robinson prepared tax returns for various relatives; and she argues that this activity, when combined with certain of her work for APC, constituted an "accounting" business.  However, all the returns she prepared were for no charge, and none of her work for APC was allocable to a distinct non-employee business activity that could be aggregated with this return preparation.  This unpaid return preparation activity was not an activity that she undertook for profit.

V.   Income tax returns

A.   APC's Forms 1120S

Mrs. Robinson prepared APC's returns on Forms 1120S, "U.S. Income Tax Return for an S Corporation", and on those returns APC reported gross receipts of $559,276 for 2007 and $513,519 for 2008.  Mrs. Robinson alleges that she computed those gross receipts by adding up the deposits made into APC's bank accounts; but in fact APC's bank statements show gross deposits of larger amounts--$698,273 in 2007 and $580,763 in 2008.  Thus, APC had bank deposits of $138,997 in 2007 and $67,244 in 2008 that it did not report as income (and that the IRS does not contend should be added to APC's gross receipts); and we are therefore unable to tell what Mrs. Robinson's method actually was.

[*11] The Robinsons allege that they made contributions of capital to APC in the amounts of $90,317 in 2007 and $35,857 in 2008 that they erroneously reported as gross receipts. They do not document this allegation; and even if it is true, it is accounted for by the unreported deposits. We find that APC did not report excessive gross receipts by including contributions to capital as gross receipts.

B.    The Robinsons' Forms 1040

For tax years 2007 and 2008 the Robinsons filed their Federal income tax returns jointly on Forms 1040, "U.S. Individual Income Tax Return", to which they attached Schedules A; Schedules C, on which they reported the income and expenses of Mrs. Robinson's accounting activities (including APC); and Schedules E, on which they reported income, deductions, and losses for two rental properties.

1.    Schedule E

On each Schedule E, the Robinsons claimed loss deductions (i.e., $60,724 for 2007 and $61,053 for 2008) from the rental of the Magnolia house. These losses were derived from the various Magnolia house expense deductions that the Robinsons claimed.

On their 2008 Schedule E, the Robinsons claimed a loss deduction of $17,816 from the rental of the Eagle Beak house. Though the Robinsons reported

**[*12]** rents of $40,140 (received from their daughter as tenant), the Robinsons claimed various deductions, including insurance, mortgage interest, and depreciation, that more than offset those rents.

    2.    Schedule C

On each Schedule C, Mrs. Robinson listed her business activity as "Accounting" and listed the address of the Heron Way house as the business address. All of the gross receipts reported on her Schedules C ($8,500 for 2007 and $11,143 for 2008) consisted only of money received from APC.

On the Schedules C, Mrs. Robinson reported "Car and truck expenses" on line 9, in the amounts of $3,040 for 2007 and $3,420 for 2008, which are the amounts still at issue.[7] (As we explain below, she also claimed on Schedule A vehicle expenses totaling $2,910 for 2007 and $926 for 2008.)

For 2007 Mrs. Robinson deducted $5,634 on line 30 of Schedule C as "Business expenses for the use of your home", an amount that consisted of 15.28% of the Robinsons' deductible mortgage interest. For 2007 she also deducted on Schedule C $5,800 as "Taxes and licenses", consisting in fact of 97% of the real

---

[7]Mrs. Robinson also deducted as "Other expenses" on Schedule C duplicative vehicle expenses--i.e., depreciation of $870 for 2007 and claimed expenditures for brakes, gas, maintenance, and tires ($7,200 for 2007 and $2,360 for 2008). In their brief the Robinsons concede these items.

[*13] estate taxes paid on their Heron Way home (which they duplicatively deducted on Schedule A), and deducted $3,600 as "Utilities", consisting of 32% of the utilities expenses paid on the Heron Way house. The 2007 home-related deductions thus totaled $15,034. (None of these percentages--15.28%, 97%, and 32%--corresponded to the home office's 3.33% portion of the house.)

For 2008 Mrs. Robinson deducted $2,478 on Schedule C, line 30, as "Business expenses for the use of your home". The amount consisted entirely of claimed depreciation on the home for 2008 plus a carryover of depreciation from 2007. As with mortgage interest, Mrs. Robinson used 15.28% (not 3.33%) as the deductible portion of the depreciation.

3.      Schedule A

On each Schedule A, Mrs. Robinson reported unreimbursed employee business expenses. The expenses were explained on Form 2106-EZ, "Unreimbursed Employee Business Expenses", as vehicle expenses measured by miles driven.[8] Her Forms 2106-EZ reported 6,000 miles driven for 2007 and 1,700 miles driven for 2008 for "Business" (and zero miles driven for "Commuting"), yielding claimed vehicle expense deductions of $2,910 for 2007

_____

[8]Mrs. Robinson's Forms 2106-EZ also claimed "Business expenses" of $323 for 2007 and $324 for 2008, which consist of depreciation claimed on a laptop computer, but it appears she has abandoned those claims.

**[*14]** and $926 for 2008. (Thus, for each year Mrs. Robinson deducted vehicle expense on Schedule C as an expense of her accounting activity and on Schedule A as an unreimbursed employee business expense.)

The Robinsons also deducted for each year, as itemized deductions on their Schedules A, real property taxes ($11,258 for 2007 and $3,500 for 2008) and home mortgage interest ($41,143 for 2007 and $40,940 for 2008). The Commissioner does not challenge the Schedule A deductions for the real property taxes and mortgage interest paid.

## VI. Audit and petition

The IRS selected the Robinsons' 2007 and 2008 returns for examination. The IRS disallowed all the Schedule C and Schedule E deductions and disallowed or proposed adjustments to certain itemized Schedule A deductions. On October 7, 2010, the IRS issued to the Robinsons a notice of deficiency for their 2007 and 2008 tax years. On January 3, 2011, the Robinsons timely mailed their petition to this Court for redetermination of the deficiencies in the notice. By an "Amendment to Answer" filed November 7, 2012, the Commissioner raised additional adjustments. See supra note 2.

**[\*15]**                                    OPINION

I.      <u>Burden of proof</u>

The IRS's determinations are presumed correct, and taxpayers generally bear the burden to prove their entitlement to any deduction they claim, Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933), and must satisfy the specific requirements for any deduction claimed, <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  To that end, taxpayers must substantiate each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability.  Sec. 6001; <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001).

As an exception to the general rule, the Commissioner bears the burden of proof as to "new matter" raised in the answer that was not included in the notice of deficiency.  <u>See</u> Rule 142(a)(1).  For the new matter in this case, <u>see</u> <u>supra</u> note 2, the Commissioner has met his burden, as is explained below.  A further exception to the general rule is found in section 7491(a), which shifts the burden if "a taxpayer introduces credible evidence with respect to any factual issue"; and the Robinsons attempt to invoke this exception with respect to other issues in this case.  That attempt fails, however, precisely because "credible evidence" is lacking.

[*16] II.    Schedule E deductions

The Robinsons contend that they may deduct depreciation, interest, and other business expenses related to their ownership of two real properties, either under section 162(a) as part of a real estate trade or business or under section 212 in connection with the holding of property for the production of income.  We have found that the Robinsons did not engage in any real estate activity as a trade or business and did not hold these properties for the production of income; and for the reasons explained below, the Robinsons are not entitled to any Schedule E deductions.  In the alternative, these expenses are subject to the section 469 passive activity loss limits.

A.    Basic legal principles

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  An ordinary expense is one that commonly or frequently occurs in the taxpayer's business, Deputy v. du Pont, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, Welch v. Helvering, 290 U.S. at 113.  The expense must directly connect with or pertain to the taxpayer's business.  26 C.F.R. sec. 1.162-1(a), Income Tax Regs.  For purposes of section 162, a "trade or business" must be engaged in for profit.  See

[*17] Dreicer v. Commissioner, 78 T.C. 642, 643 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983).

Section 212(1) and (2) allows a taxpayer to deduct all the ordinary and necessary expenses paid or incurred (1) for the production or collection of income or (2) for the management, conservation, or maintenance of property held for the production of income (albeit not as part of a trade or business). Whether property is held for the production of income is a factual question and turns on whether the use of the property was of a nature that, in good faith, the taxpayer genuinely expected or intended to make a profit. Coors v. Commissioner, 60 T.C. 368, 410 (1973), aff'd, 519 F.2d 1280 (10th Cir. 1975). Expenses incurred in holding property for the production of income may be currently deductible even though the property is not currently productive. 26 C.F.R. sec. 1.212-1(b), Income Tax Regs. However, a serious lack of effort to rent or sell a taxpayer's former personal residence indicates that the property was not held for the production of income pursuant to section 212. Meredith v. Commissioner, 65 T.C. 34, 43 (1975).

Thus, sections 162 and 212 allow deductions for expenses incurred in for-profit activities, and the Code includes corresponding provisions that disallow deductions for expenses incurred otherwise: Section 262(a) disallows the

**[\*18]** deduction of personal, living, or family expenses, and section 183 disallows the deduction of expenses incurred in an "activity not engaged in for profit".

### B.     The Magnolia house

#### 1.     Lack of profit motive

The Robinsons claimed losses for 2007 and 2008 derived from rental real estate expenses and depreciation on the Magnolia house.  Though the Robinsons rented out the Magnolia house from 1995 through 1999 and again in December 2009, they received no rents in 2007 or 2008.  The property was not held out for rent from 1999 until 2009, a 10-year period which includes both tax years at issue.  Mr. Robinson made only a perfunctory effort to sell the property during 2007 and 2008.[9]

We have found that the Robinsons did not engage in a real estate trade or business or hold the Magnolia house out for the production of income.  They failed to make any significant attempt to sell the property during the years at issue, and the house went unrented for the 10-year period encompassing the tax years at issue.  Therefore, the expenses are not currently deductible pursuant to

---

[9]Mr. Robinson performed no market research when listing a price in these negotiations and refused to sell the property for less than the principal amount due on the mortgage.

[*19] section 162(a)(2) or 212(2). Accordingly, we disallow the loss deductions related to the Magnolia house that the Robinsons claimed on Schedule E.

### 2. Passive activity loss

In the alternative, even assuming the property was held for production of income in a rental endeavor, losses from the Robinsons' real estate activities would be (as the Commissioner correctly contends) subject to the passive activity loss limits of section 469, which prohibit taxpayers from claiming losses from passive activities, specifically losses generated from the rental of real property. Sec. 469(a), (c)(2), (4), (6). The Robinsons invoke an exception to that general rule: Section 469(c)(7) provides an exception (and allows loss deductions) for taxpayers engaged in a real property businesses (i.e., performing more than 50% of personal services during the year in "real property trades or businesses" and materially participating for more than 750 hours in real property trades or businesses). But given our findings, this exception does not apply. First, as a threshold matter, we note that Mr. Robinson looks solely to the Magnolia house to support his claim to real estate professional status. On some occasions, but to an extent that the credible evidence does not enable us to quantify, Mr. Robinson did, while traveling from his home in Virginia to Atlantic City, stop at the Magnolia house to make repairs. But the evidence does not support Mr. Robinson's

[*20] implausible assertion that, on numerous occasions, he rose early in Atlantic City, drove an hour to Magnolia, worked a six-hour day, drove an hour back to Atlantic City, and gambled in the evening. We do not believe that he spent more than 750 hours working on the property. This would have required that he work 125 six-hour workdays--more than a third of the year--and no evidence corroborates this assertion. Thus, even leaving aside the preliminary consideration of whether Mr. Robinson "materially participated" with respect to the Magnolia house, he cannot in any event show 750 hours and thereby meet the statutory requirement of conducting a real property trade or business. Consequently, he may not currently deduct the passive activity losses related to the Magnolia house.

C.    The Eagle Beak house

The Commissioner contends--and has the burden to prove, see supra note 2--that the Robinsons did not hold the Eagle Beak house as part of a trade or business or for the production of income. We have found that the Commissioner met that burden and that the Robinsons did not hold the house for the purpose of making a profit. Rather, Mrs. Robinson participated in the purchase of that house for the personal purpose of helping her daughter.

The facts of this case are similar to those in Redfield v. Commissioner, T.C. Memo. 1993-611, 66 T.C.M. (CCH) 1687 (1993), in which a mother invested in a

**[\*21]** property to provide a permanent residence for her daughter and son-in-law.

Mrs. Redfield entered into an agreement with her daughter and son-in-law under

which she agreed to pay $5,000 for the downpayment, in return for a 75%

ownership interest, while the daughter and son-in-law obtained a $49,000

mortgage and received a 25% interest. The daughter and son-in-law further

agreed to rent the property from Mrs. Redfield for $500 per month. Id., 66 T.C.M.

(CCH) at 1688-1689. We held that the agreement was entered into for the sole

purpose of helping her daughter and son-in-law obtain the property, and we

disallowed related losses because the agreement lacked an actual and honest

objective of making a profit on the transaction. Id. at 1689.

The arrangement between Mrs. Robinson and her daughter similarly lacked

the profit motive required by sections 162(a) and 212(2). Ms. Vaughn was listed

along with Mrs. Robinson on the paperwork as a co-purchaser, and both their

names appear on the deed with right of survivorship. The Robinsons made no

showing as to whether the rent their daughter paid was an arm's-length rate and

made no showing as to any expectation that the property would appreciate (or that

they, and not Ms. Vaughn, would profit from any such appreciation). In reality,

the Robinsons were helping their daughter to obtain housing and making possible

provision for their own future housing. Ms. Vaughn made the mortgage payments

[*22] to the Robinsons on a house that the Robinsons planned to occupy later; and the Robinsons sought to deduct, as Schedule E expenses, amounts that were essentially Ms. Vaughn's living expenses.[10] While helping a family member may be entirely appropriate, a taxpayer may not structure her affairs to transform personal expenses (such as a daughter's living expenses for a residence) into deductible items that create loss. See secs. 262(a), 7701(o). We therefore sustain the IRS's determination to disallow the Schedule E loss attributable to the Eagle Beak house.

III.   Schedule C deductions

Mrs. Robinson filed her 2007 and 2008 Schedules C to report the income and expenses (i.e., vehicle expenses and home office expenses) from her supposed activity as an accountant. Her entitlement to do so depends on whether, as she contends, she was engaged in a distinct, for-profit "accounting" trade or business or whether instead, as respondent contends (and has the burden to prove), she had

---

[10]If the Robinsons had simply given or lent money to Ms. Vaughn to buy or rent a house, their gift or loan would have generated no tax advantage for them. But by reporting the transaction on Schedule E and claiming deductions in excess of the rent that the arrangement yielded, they attempted to use the resulting losses to shelter their other income from tax.

**[*23]** no such activity but rather earned as an employee the revenue she reported on Schedule C.[11]

The only gross receipts reported on her Schedules C for 2007 and 2008 were in fact compensation for her work at APC. That work consisted principally of tasks involved in the regular daily operation of the daycare center, such as teaching, cleaning, and obtaining supplies; and there is no basis for allocating her pay instead to the fraction of her time spent on tasks that might arguably have related to accounting.

Ms. Robinson's non-APC "accounting" work was for non-paying clients who were members of her family, an activity that was not undertaken for profit. Thus Mrs. Robinson's alleged activities as an accountant were not a trade or business motivated by profit but rather an artificial combination of the duties she performed as an employee of APC and the help she rendered to her family for personal reasons. For that reason the income she reported on Schedule C should

---

[11]Where it is necessary to distinguish an independent contractor from an employee, we consult the common law rules that govern this distinction. See Weber v. Commissioner, 103 T.C. 378, 386-387 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995). In this case, however, Mrs. Robinson admits that she was an employee as to some of her activities; and we have held, as a matter of fact, that the bulk of her work for which she was compensated by APC was these admitted employee activities. Consequently, we do not need to further analyze the nature of her work under the common law rules.

[*24] instead be reported as "other income" on the first page of Form 1040, and the deductions claimed on Schedule C are disallowed.[12]

IV.    Schedule A deductions

However, since Mrs. Robinson did perform certain activities as an employee of APC, she can argue that some of the expenses disallowed on Schedule C might be allowed on Schedule A as unreimbursed employee business expenses.  Such expenses may be deductible if the total of such deductions exceed the 2% floor imposed by section 67(a).  At issue in this connection are home office expenses (consisting potentially of real property taxes, mortgage interest, and utilities paid on their home at Heron Way) and vehicle expenses.

A.    Home office expenses

Unless a relevant exception applies, "no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  Sec. 280A(a).

---

[12]Even if Mrs. Robinson were entitled to Schedule C deductions, the amounts of her home office deductions would be radically reduced (to 3.33% of the relevant amounts, rather than the much larger percentages she claimed) and her vehicle expense deductions would be disallowed in full for lack of adequate substantiation, as we discuss below in conjunction with the vehicle expenses claimed as unreimbursed employee business expense deductions on Schedule A. See infra part IV.B.

[*25] However, Mrs. Robinson relies upon the "home office" exception, of section 280A(c)(1), which allows a taxpayer to deduct certain expenses "to the extent such item is allocable to a portion of the dwelling unit which is exclusively[13] used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer". We have found that Mrs. Robinson did maintain a home office that she used for the convenience of her employer, APC. However, we have also found that this use was not exclusive and that this office was not her principal place of business as an APC employee. That being so, she may not deduct her home office expenses.

B.     Vehicle expenses

Mrs. Robinson deducted $3,223 for 2007 and $1,250 for 2008 as unreimbursed employee travel expenses on Schedule A. Deductions related to passenger vehicles are subject to strict substantiation requirements under sections 274(d) and 280F(d)(4). Taxpayers must establish: (a) the amount of the business

---

[13]When the home is used "on a regular basis in the taxpayer's trade or business of providing day care for children", sec. 280A(c)(4)(A), then a home office deduction may be available even where the use is not exclusive, see sec. 280A(c)(4)(C). On Mrs. Robinson's Forms 8829, "Expenses for Business Use of Your Home", she took the position that she was entitled to this day care treatment. However, although she worked for APC, which did provide day care, Mrs. Robinson did not have or claim any daycare trade or business of her own, and she made no suggestion that children were ever cared for in her home.

[*26] use of each vehicle in terms of mileage; (b) the exact date(s) of the uses of the vehicle; and (c) the business purpose with respect to each expenditure or use. 26 C.F.R. sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). "The taxpayer's costs of commuting[14] to * * * [her] place of business or employment are personal expenses and do not qualify as deductible expenses." 26 C.F.R. sec. 1.262-1(b)(5), Income Tax Regs. Personal transportation expenses are not deductible. Sec. 262(a).

Mrs. Robinson failed to adequately substantiate the business purpose of the amounts deducted on her Schedules A and Forms 2106-EZ for vehicle expenses. During the examination process (i.e., not contemporaneously during 2007 and 2008), Mrs. Robinson constructed two mileage logs which purport to show the business mileage and the exact dates of the uses of her vehicle. One log lists the mileage related to her Schedule A deductions, and one log lists the mileage related to her Schedule C deductions (with some trips claimed on both). However, each alleged trip originated from Mrs. Robinson's home on Heron Way, and the destinations of the trips included the bank, grocery stores, and Mrs. Robinson's

---

[14]Because Mrs. Robinson's home office was not the principal place of business for her employment at APC, she cannot invoke the so-called "home office exception" to the general rule disallowing commuting expenses. See Gorokhovsky v. Commissioner, T.C. Memo. 2013-65, *18-*19.

[*27] places of employment at the APC locations. We have found that these trips were either for commuting (a nondeductible expense under 26 C.F.R. section 1.262-1(b)(5)) or for personal transportation and errands (nondeductible under section 262). Because of the lack of credible substantiating evidence, we sustain the disallowance of the deduction of the vehicle expenses as Schedule A unreimbursed employee expenses.

V.    APC's gross receipts

Mrs. Robinson prepared APC's Forms 1120S for 2007 and 2008. She contends that she overstated the gross receipts of APC by $90,317 for 2007 and $35,857 for 2008 by mischaracterizing contributions of capital from the Robinsons to APC as gross receipts. We note first that the Robinsons presented no documentation substantiating the exact amounts they contributed to APC. Even assuming that the Robinsons contributed the amounts claimed for 2007 and 2008-- an issue we do not decide--evidence in the record indicates that APC's actual gross receipts for 2007 and 2008 exceeded the gross receipts reported on the Forms 1120S by more than the claimed contributions of the Robinsons. We therefore decline to readjust the gross receipts of APC for the 2007 and 2008 tax years.

**[*28]** VI.   <u>Accuracy-related penalties</u>

Section 6662 imposes an "accuracy-related penalty" of 20% of the portion of the underpayment of tax that is attributable to the taxpayer's negligence or disregard of rules or regulations or that is attributable to any substantial understatement of income tax.  Sec. 6662(a), (b)(1), (2).  The Commissioner asserts that the Robinsons' understatements of income tax were substantial.[15] Under section 7491(c), the Commissioner bears the burden of production and must produce sufficient evidence that the imposition of the penalty is appropriate in a given case.  Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect.  Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

An understatement of an individual's income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1).  Even though we have allowed additional deductions not allowed in the notice of deficiency, it appears that for both 2007 and 2008 the Robinsons' understatements of income tax (which will be recomputed pursuant to Rule 155)

[15]The IRS also asserts that the Robinsons were negligent in the preparation of their returns for 2007 and 2008.  <u>See</u> sec. 6662(b)(1) (a taxpayer's negligence or disregard for the income tax rules or regulations also gives rise to the accuracy-related penalty).  Since it appears that there are substantial understatements, we do not address the issue of negligence.

**[\*29]** will exceed the greater of 10% of the tax required to be shown on the return or $5,000. Accordingly, the Commissioner has met his burden to establish that the Robinsons' returns reflected "substantial understatement[s]". The Robinsons will therefore owe the accuracy-related penalty on the entire amount of the underpayment for each year unless they successfully invoke a defense to the penalty.

The section 6662(a) penalty is not imposed if a taxpayer can demonstrate (1) reasonable cause for the underpayment and (2) that the taxpayer acted in good faith. Sec. 6664(c)(1). Whether a taxpayer acted with reasonable cause and in good faith is a facts and circumstances decision, with the most important factor being the extent of the taxpayer's efforts to assess his or her proper tax liability. 26 C.F.R. sec. 1.6664-4(b)(1), Income Tax Regs.

The Robinsons assert that errors on their 2007 and 2008 tax returns were caused by commercial tax preparation software. However, tax preparation software is only as good as the information the taxpayer puts into it. See Bunney v. Commissioner, 114 T.C. 259, 266-267 (2000). The misuse of tax preparation software, even if unintentional or accidental, is no defense to penalties under section 6662. Langley v. Commissioner, T.C. Memo. 2013-22, at \*9-\*10. Taxpayers have a duty to read their returns to ensure that all income items are

**[*30]** correctly included. The Robinsons, and not their software, were responsible for their positions that we have overruled. We hold that the Robinsons have not established reasonable cause and good faith.

## VII.   Conclusion

The determinations in the IRS's notice of deficiency are sustained in large part, as is explained above. So that the liabilities for the years in issue can be recomputed,

Decision will be entered under

Rule 155.