T.C. Summary Opinion 2015-28

UNITED STATES TAX COURT

BAHRAM M. TARIGHI AND PARVANEH TARIGHI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7654-13S.                    Filed April 13, 2015.

Bahram M. Tarighi and Parvaneh Tarighi, pro sese.

Elizabeth C. Mourges, for respondent.

SUMMARY OPINION

GERBER, Judge:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income tax and penalties as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|-------------------------------|---------------------|
| 2009 | $10,531 | $74.80 | $2,106.20 |
| 2010 | 19,465 | -0- | 3,893.00 |
| 2011 | 1,763 | -0- | -0- |

After concessions the issues remaining for our consideration are: (1) whether Mr. Tarighi was engaged in a trade or business; (2) whether petitioners are entitled to various itemized deductions; (3) whether petitioners failed to report a State tax refund received in 2010; (4) whether petitioners are liable for an addition to tax for the failure to timely file their 2009 return; and (5) whether petitioners are liable for accuracy-related penalties for 2009 and 2010.

## Background

Petitioners resided in Maryland at the time their petition was filed. Petitioners' joint income tax return for 2009 was due on April 15, 2010, and was filed on April 25, 2010. Petitioners' joint income tax returns for 2010 and 2011 were timely filed.

At the time of trial Mr. Tarighi was a civil engineer with 25 years of experience as a highway designer and construction engineer.  After many years of being an employee, Mr. Tarighi wanted to start his own company.  In 2008, after encouragement from his family and while still employed, he decided to pursue this goal.  He selected the name Civil Engineering Services (CES), had business cards printed, designed stationery, and set up a Web site.  Mr. Tarighi also purchased a computer, a desk, and other office supplies and set up an office in the basement of his home.

In mid-2008 Mr. Tarighi's employer dramatically reduced his salary, and he decided he would devote more of his time to developing CES.  From his experience in the field Mr. Tarighi knew many contractors and project engineers performing work on the local highways in Maryland.  He regularly visited construction sites after work to distribute business cards and speak with managers and others performing construction on the local highways.  In addition to promoting his business, Mr. Tarighi would use these trips to stay abreast of developments in the highway construction engineering industry.  He continued these visits throughout 2009, 2010, and 2011 (years at issue).

During 2009 and the first half of 2010 Mr. Tarighi was employed by Wallace Montgomery & Associates (Wallace Montgomery).  Wallace Montgomery had a

contract with the Maryland Transit Association (MTA), and Mr. Tarighi worked exclusively on this contract. Mr. Tarighi worked in the MTA's office. It has not been shown how often Mr. Tarighi would drive from his home to Wallace Montgomery's office before going to the MTA's office and how often he would drive from his home directly to the MTA's office.

During the second half of 2010 Mr. Tarighi worked for Progressive Engineering Services (Progressive). MTA contracted with Progressive to perform the work that MTA had previously contracted Wallace Montgomery to perform. While employed by Progressive Mr. Tarighi worked in the MTA's office and drove from his home directly to the MTA's office each day. Progressive's contract with the MTA was completed on December 3, 2010. Mr. Tarighi became unemployed when Progressive's contract with MTA ended, and he rejected a job offer from Wallace Montgomery to focus his attention on CES.

Petitioners claimed deductions for the following expenses related to CES on Schedules C, Profit or Loss From Business, attached to their 2009 and 2010 Federal income tax returns:

| Expense | 2009 | 2010 |
|---|---|---|
| Taxes and licenses | $840 | $255 |
| Supplies | 380 | 110 |

| | | |
|---|---|---|
| Repairs and maintenance | 4,400 | -0- |
| Office | 770 | 650 |
| Interest-mortgage | 6,500 | 5,090 |
| Insurance (other than health) | 1,200 | -0- |
| Depreciation and sec. 179 | 2,947 | 9,990 |
| Advertising | 980 | 1,200 |
| Car and truck | 10,574 | 8,133 |
| Business use of the home | 4,588 | 12,190 |
| Meals and entertainment | 8,800 | -0- |
| Utilities | 2,200 | 1,050 |
| Travel | 2,450 | 1,500 |
| Legal and professional services | -0- | 180 |
| Commissions and fees | -0- | 420 |
| Other | -0- | 4,850 |
| Total | 46,629 | 45,618 |

Respondent disallowed deductions for the Schedule C expenses because of lack of substantiation.

During the years at issue CES did not have any clients, was not hired to perform any services, did not bid on any highway engineering jobs, and had no income. Mr. Tarighi provided a calendar with cryptic handwritten notes to substantiate the miles he drove for CES during the years at issue. Petitioners had a

flood in their basement in 2010 and lost some of the receipts related to CES. Mr. Tarighi was unable to produce records or receipts for tolls incurred, meals and entertainment expenses, office supplies, his office furniture, or his office computer. As substantiation for his home office expenses Mr. Tarighi provided copies of his household utility bills. The amounts on the bills were inconsistent with the amounts of his deductions for CES during the years at issue.

Respondent also disallowed the following deductions on Schedules A, Itemized Deductions, for lack of substantiation: the 2009 deduction for other taxes, the 2009 and 2010 medical and dental expense deductions, and deductions for unreimbursed employee business expenses for the years at issue. Respondent also adjusted the amount of petitioners' 2009 Schedule A deduction for real estate taxes on the basis of the information that petitioner's lenders provided.

For 2009 petitioners claimed a $6,945 deduction for State income taxes. In 2010 petitioners received a State income tax refund of $6,945 from the State of Maryland for the 2009 tax year, and this amount was not reported on their 2010 return.

## Discussion

We must decide whether petitioners have shown that they are entitled to deduct amounts greater than those respondent allowed for the years at issue and

whether they failed to include their State income tax refund in income for 2010.[2]

We also must decide whether petitioners are liable for a failure to timely file

addition to tax for 2009 and whether they are liable for accuracy-related penalties

for 2009 and 2010.

Startup Expenses Reported on Schedules C

Section 162(a) generally allows taxpayers to deduct ordinary and necessary

expenses paid or incurred in connection with a trade or business. In order for a

taxpayer to deduct expenses, the trade or business must be functioning as a going

concern and performing the activities for which it was organized at the time that

the expenses are incurred. Richmond Television Corp. v. United States, 345 F.2d

901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68

(1965); Hardy v. Commissioner, 93 T.C. 684, 687-693 (1989), aff'd in part,

remanded in part, 1990 U.S. App. LEXIS 19670 (10th Cir. Oct. 29, 1990); Woody

v. Commissioner, T.C. Memo. 2009-93, aff'd, 403 Fed. Appx. 519 (D.C. Cir.

2010); Glovtov v. Commissioner, T.C. Memo. 2007-147. Although section 162(a)

_____

[2]The determinations in the Commissioner's notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). No question was raised by either party regarding shifting the burden of proof or going forward with the evidence, and petitioners have not shown that the burden should shift to respondent. Thus, the burden of proof remains on petitioners. See sec. 7491(a).

does not allow the deduction of startup and preopening expenses, it may be possible to deduct them over time. Sec. 195; Hardy v. Commissioner, 93 T.C. at 687-693.

Whether a taxpayer is engaged in a trade or business for purposes of section 162(a) depends on the facts and circumstances of each case. Woody v. Commissioner, T.C. Memo. 2009-93. The Court has focused on the following three factors when making this determination: (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. See id.

On the basis of the evidence presented, we conclude that Mr. Tarighi was not engaged in a trade or business for purposes of section 162(a) during the years at issue. CES did not have any income or clients and did not bid on any jobs during the years at issue. Though Mr. Tarighi frequently visited construction sites to promote CES, if he had the intention of earning a profit, he would have pursued contracts and bid on jobs. Mr. Tarighi's actions exemplify steps taken to set up a business, not those of a business that has commenced and is presently operating as a going concern.

We hold that the amounts reported on petitioners' 2009 and 2010 Schedules C are startup expenses and may not be deducted pursuant to section 162(a). Consequently, we need not address whether petitioners have provided sufficient evidence to substantiate the amounts reported on Schedules C.

Adjustments to Itemized Deductions

Deductions are a matter of legislative grace, and taxpayers bear the burden of establishing that they are entitled to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required to maintain sufficient records to allow the Commissioner to determine their correct tax liability. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Real Estate Taxes

Taxpayers may deduct State and local real property taxes paid or accrued within the taxable year. Sec. 164(a). Petitioners claimed a $6,347 deduction for real estate taxes on their 2009 return. Petitioners' lender reported to respondent that petitioners paid $3,834.50 in real estate taxes in 2009. Petitioners have not provided substantiation to support a deduction greater than the amount reported by the lender and are not entitled to deduct more than $3,834.50 for 2009.

On their 2010 return petitioners claimed a $3,015 deduction for real estate taxes. Petitioners' lender reported that petitioners paid $4,120.61 in real estate

taxes in 2010. While this discrepancy was not noted in the notice of deficiency, the lender's report substantiates that petitioners are entitled to a deduction greater than what was reported on their 2010 return.

Other Taxes

In addition to State, local and foreign real property taxes, section 164(a) allows a deduction for various other State, local and foreign taxes paid or accrued during the taxable year. Petitioners claimed a $790 deduction for "other taxes" on their 2009 return. Petitioners have not provided any support to substantiate this deduction and are not entitled to a deduction for "other taxes."

Medical, Dental and Insurance Premiums

Section 213(a) generally allows a deduction for expenses paid during the taxable year for medical care of the taxpayer, his spouse, or a dependent that is not compensated for by insurance, to the extent the expenses exceed 7.5% of adjusted gross income. "Medical care" is broadly defined to include amounts paid for "the diagnosis, cure, mitigation, treatment, or prevention of disease" or for insurance covering such things. Sec. 213(d)(1)(A), (D).

In order to deduct expenses for medical care, taxpayers are specifically required to "furnish the name and address of each person to whom payment for medical expenses was made and the amount and date of the payment". Sec. 1.213-

1(h), Income Tax Regs. Further, payments for medical insurance premiums may be deducted only if the payments were made with money that was included in the taxpayer's gross income. Adams v. Commissioner, T.C. Memo. 2013-92; Lenihan v. Commissioner, T.C. Memo. 2006-259, aff'd, 296 Fed. Appx. 160 (2d Cir. 2008).

Petitioners claimed deductions of $13,250 for 2009 and $5,995 for 2011, before the application of the 7.5% adjusted gross income limitation. Mr. Tarighi submitted a handwritten summary at trial claiming that petitioners' medical expenses were $11,098.39 for 2009, $11,066.27 for 2010 and $8,952.12 for 2011. Petitioners also submitted copies of invoices and statements from various medical and dental providers, explanations of benefits from multiple insurance companies, canceled checks, and receipts. Petitioners did not show that their insurance premiums were paid with after-tax dollars.

Respondent determined that the petitioners substantiated medical expenses of $810 for 2009, $306 for 2010, and $108 for 2011. On the basis of the evidence submitted at trial, we find that petitioners are not entitled to deduct any of their medical expenses because their substantiated expenses do not exceed 7.5% of their adjusted gross income.

Unreimbursed Employee Business Expenses

For 2009, 2010 and 2011 petitioners claimed deductions of $57,820,[3] $87,730[4] and $10,105,[5] respectively, for unreimbursed employee mileage expenses Mr. Tarighi incurred as an employee. Generally, a taxpayer's costs of commuting from home to his or her place of business or employment are personal expenses that may not be deducted. Sec. 1.262-1(b)(5), Income Tax Regs.; see also sec. 212(a); sec. 1.212-1(f), Income Tax Regs. However, a taxpayer may be able to deduct expenses incurred in commuting between one or more business locations. Dehr v. Commissioner, T.C. Memo. 1998-441; Friend v. Commissioner, T.C. Memo. 1990-144, aff'd without published opinion, 937 F.2d 608 (6th Cir. 1991). In order for a taxpayer to deduct the business mileage of a passenger vehicle, the

---

[3]These amounts were reported on the 2009 return as unreimbursed employee business expenses. At trial Mr. Tarighi testified that these deductions were entirely for unreimbursed mileage expenses.

[4]Petitioners' 2010 return reported $66,371 as unreimbursed employee business expenses and $21,359 as other miscellaneous itemized deductions subject to the 2% adjusted gross income limitation. Petitioners did not provide any evidence regarding these deductions at trial, and, on the basis of Mr. Tarighi's testimony, we find that these amounts should also have been reported as unreimbursed employee business expenses.

[5]These amounts were reported on the 2011 return as unreimbursed employee business expenses. At trial Mr. Tarighi testified that these deductions were entirely for unreimbursed mileage expenses.

strict substantiation requirements of section 274(d) must be met.  Secs. 274(d)(4),
280F(d)(4).  Taxpayers must generally establish:  (1) the amount of the business
use of each vehicle in terms of mileage; (2) the exact date(s) of the use of the
vehicle; and (3) the business purpose with respect to each expenditure or use.
Robinson v. Commissioner, T.C. Memo. 2014-120; sec. 1.274-5T(b)(6),
Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6 1985).

During 2009 and the first half of 2010 Mr. Tarighi was employed by Wallace
Montgomery and worked exclusively on Wallace Montgomery's contract with the
MTA.  Wallace Montgomery's policy was to reimburse employees for each mile
driven in excess of 30 miles.  Mr. Tarighi claimed reimbursement for the miles he
drove to the MTA's office that he was not reimbursed for under Wallace
Montgomery's policy.  Yet, on the basis of the evidence presented, it is not
possible to determine how often Mr. Tarighi drove directly to the MTA's office
from his home and how often he drove from his home to Wallace Montgomery's
office and then to the MTA's office.  Further, Mr. Tarighi did not maintain a log of
miles driven for Wallace Montgomery.  We accordingly hold that petitioners have
not presented sufficient substantiation to meet the stricter standards for business
travel and to support a deduction for the unreimbursed mileage expenses for 2009
and 2010 incurred while Mr. Tarighi was employed by Wallace Montgomery.

Mr. Tarighi was employed by Progressive during the second half of 2010 and worked on Progressive's contract with the MTA. Mr. Tarighi testified that he drove from his home directly to the MTA's office every day. The MTA's office was Mr. Tarighi's place of employment while he was employed by Progressive. Because the cost of commuting is a nondeductible personal expense, petitioners are not entitled to a deduction for unreimbursed employee expenses for mileage for the time that Mr. Tarighi was employed by Progressive. See sec. 1.262-1(b)(5), Income Tax Regs.

Mr. Tarighi was not employed during 2011. Consequently, as he conceded at trial, petitioners are not entitled to any unreimbursed employee expenses for 2011.

Professional Engineering Exam Fee

Petitioners claimed a $275 deduction on their 2009 Schedule C for Mr. Tarighi's professional engineering exam fee. At trial Mr. Tarighi testified that he took the exams in the years at issue. Petitioners provided no records or receipts to substantiate when these examinations were taken or their cost.

While we have determined that petitioners are not entitled to any Schedule C deductions because Mr. Tarighi was not engaged in a trade or business with respect to CES, taking the professional exam was necessary in order for Mr. Tarighi to

maintain his engineering license. Though it may have been possible for Mr. Tarighi to deduct his examination fees as an itemized deduction, because of the unfortunate lack of substantiation, petitioners are not entitled to a deduction.

Failure To Report a Portion of a Taxable State Income Tax Refund

The tax benefit rule of section 111 provides that if an amount is deducted from income in one year and a part or all of the amount is recovered in a later year, the recovered amount is treated as income for the year it is received to the extent the deduction reduced the amount of tax imposed. Sec. 111(a); Francisco v. Commissioner, 119 T.C. 317, 333-334 (2002), aff'd, 370 F.3d 1228 (D.C. Cir. 2004); Kadunc v. Commissioner, T.C. Memo. 1997-92; see Hillsboro Nat'l Bank v. Commissioner, 460 U.S. 370, 377 (1983).

Petitioners deducted Maryland State income tax of $6,945 on their 2009 Federal return. Their 2010 return indicates that they received a $4,930 State income tax refund in 2010, but the Form 1099-G, Certain Government Payments, issued to petitioners by the State of Maryland indicates that they received a refund of $6,945. We hold that petitioners should have included the entire $6,945 on their 2010 return.

Failure To Timely File Addition to Tax for 2009

Section 6651(a)(1) provides for an addition to tax of 5% per month, up to 25%, for late filing. Petitioners' 2009 income tax return was due on April 15, 2010, but it was not filed until April 25, 2010. Petitioners bear the burden of showing that there was reasonable cause to excuse the late filing. See Rule 142(a); Higbee v. Commissioner, 116 T.C. 438 (2001). Petitioners have not shown reasonable cause for the late filing and therefore are liable for the section 6651(a)(1) addition to tax.

Accuracy-Related Penalties for 2009 and 2010

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty of 20% on the portion of an underpayment attributable to negligence or a substantial understatement of income tax. Negligence is defined to include any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d).

The Commissioner bears the burden of production for the accuracy-related penalty. Sec. 7491(c). This requires the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the accuracy-related

penalty.  <u>Higbee v. Commissioner</u>, 116 T.C. at 446.  Once the Commissioner satisfies his burden, the burden shifts to the taxpayer to show that the penalty should not be imposed.  <u>Id.</u> at 447; <u>see</u> Rule 142.  Respondent has met his burden of production because petitioners' understatements of income tax for 2009 and 2010 exceed both 10% of the tax required to be shown on the returns and the $5,000 threshold for application of the penalty.

Section 6664(c)(1) provides an exception to the section 6662 penalty if the taxpayer can establish that there was reasonable cause for the underpayment and that the taxpayer acted in good faith.  Sec. 1.6664-4(a), Income Tax Regs.  Whether a taxpayer acted with reasonable cause and in good faith is determined in each case by taking into account all relevant facts and circumstances.  Petitioners have not presented any evidence to show that there was reasonable cause for their underpayments for 2009 and 2010.

Accordingly, we hold that the section 6662(a) penalties apply to petitioners' underpayments for 2009 and 2010.

To reflect the foregoing,

Decision will be entered under

<u>Rule 155</u>.