**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-62

UNITED STATES TAX COURT

DERRICK JAMES BALLARD-BEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4382-13S.                    Filed July 3, 2014.

Derrick James Ballard-Bey, pro se.

<u>Christopher R. Moran</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On November 19, 2012, respondent issued a notice of deficiency to petitioner in which he determined the following deficiencies and penalties:[1]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2009 | $6,850 | $1,370 |
| 2010 | 9,167 | 1,833 |
| 2011 | 6,457 | 1,291 |

After concessions,[2] the issues for decision are whether petitioner: (1) is entitled to deduct on Schedule C, Profit or Loss From Business, losses from his book writing activity for 2010 and 2011; (2) is entitled to a dependency exemption deduction for each of 2009 and 2010; and (3) is liable for section 6662(a) accuracy-related penalties for the years in issue.[3]

---

[1]All amounts are rounded to the nearest dollar.

[2]Petitioner and respondent signed a stipulation of settled issues.

[3]Other adjustments made in the notice of deficiency are computational and will not be discussed.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in Maryland when he filed his petition.

### Dependency Exemption Deductions

Petitioner and his wife, Kimberly B. Ballard-Bey, married in September 2009. At or around the time they married, petitioner's wife moved out of her mother's home and into petitioner's apartment. At the time that petitioner's wife moved into his apartment, petitioner's childhood friend, Darcy Abney, who was otherwise homeless, was already living there. Mr. Abney lived with petitioner during 2009, 2010, and part of 2011, was unemployed during those years, and apparently had no other source of support. Petitioner also provided food to Mr. Abney while Mr. Abney lived with him. During 2009 and 2010 Mr. Abney would occasionally spend a few nights at a girlfriend's home but would always return to live with petitioner. Two months after petitioner and his wife married, a dispute over Mr. Abney's presence in the apartment led to petitioner and his wife's separating until sometime in 2011.

<u>Petitioner's Book Writing Activity</u>

During the years in issue petitioner was employed by the Washington Metropolitan Area Transit Authority. In or around late 2008 or early 2009 petitioner was referred by a coworker to James Wise for tax guidance. Apparently, Mr. Wise was the proprietor of a tax return preparation business named A Wise Tax Choice, operating from an office in Capitol Heights, Maryland. During their first meeting petitioner and Mr. Wise discussed petitioner's budding book writing activity, and in particular, certain tax-related recordkeeping requirements for that activity.

By the end of 2009 petitioner had completed a second rough draft of a book about transitioning out of involuntary treatment facilities and imprisonments, something with which he was familiar. In early 2010 petitioner contacted several traditional publishing houses to inquire about the possibility of having his book published. Petitioner became dissatisfied with the long and uncertain process associated with publishing through a traditional publishing house and decided that self-publishing was a better option. Petitioner needed a content editor, a "line" editor, and a book formatter (book editors). At the time, however, petitioner could not afford to hire book editors and decided that he would sell items related to the subject matter of his book writing activity, including "T-shirts and mugs and

different things", the income from which he would use to hire book editors and consultants to prepare his book for publication.

In 2009 petitioner met Peter Bowerman, a consultant and a moderator of a writing group called Absolute Writing. In January or February 2010 petitioner hired Mr. Bowerman to help him select "an effective and marketable" book title for his rough draft, deciding at the time on "Redefine Your Mind, Make Your Next Step Count".

In March or April 2010 petitioner, on Mr. Bowerman's recommendation, hired a Web site and graphic design company named Di Natale Design, Inc. (Di Natale Design), to create a logo, a book cover, and a Web site template. Di Natale Design referred petitioner to Blizzard Digital, a Web hosting and design company. Petitioner hired Blizzard Digital to build a Web site from which he could sell his book and other related items and to provide other Internet-related services for the Web site, including annual Web hosting, Web site optimization, and social media services.

Also in 2010 petitioner retained Renee L. Duff, an intellectual property attorney, to assist him with copyright and trademark matters with respect to his book writing activity. Specifically, Ms. Duff helped petitioner file electronic copyright applications for the logo and artwork created by Di Natale Design and

register the trademark "Redefine Your Mind" with the U.S. Patent and Trademark Office. Petitioner also hired John Hinds in 2010 to provide consultation with respect to the book title, chapter titles, trademark strategies, and Web site design.

By fall 2011 petitioner had completed a 600-page draft but had not raised the funds necessary to hire book editors and publish the book. Petitioner, in an attempt to generate the funds needed to publish his book, and on the recommendation of Mr. Hinds, purchased 100 T-shirts from Mid Florida Sportswear, Inc., on December 19, 2011. The T-shirts were embroidered with various designs that petitioner created. Petitioner intended to sell the T-shirts, which were delivered to him in January 2012, through his Web site and through free workshops that he planned on hosting at prisons and involuntary treatment facilities. Petitioner was able to sell some of the T-shirts in 2012 and 2013. As of the end of 2011 petitioner's book had not been published.

Petitioner's Federal Income Tax Returns

Mr. Wise prepared petitioner's electronically filed 2009, 2010, and 2011 Federal income tax returns. Mr. Wise placed spurious items on the returns. Petitioner approved the filing of the returns without reviewing them. Included in each of the 2009 and 2010 returns was a claimed dependency exemption deduction for Mr. Abney.

For each year in issue, petitioner's return included a Schedule C related to his book writing activity.[4]  As relevant, on his 2009, 2010, and 2011 Schedules C petitioner:  (1) reported gross receipts of $250 and $750 for 2009 and 2010, respectively, and zero gross receipts for 2011;[5] and (2) reported net losses of $23,143, $9,640, and $18,358, respectively.  The net losses are taken into account in the computation of the adjusted gross income shown on petitioner's 2009, 2010, and 2011 returns.

During the audit, petitioner prepared amended returns for 2009 and 2010.  Respondent received those amended returns on March 6, 2012, but did not accept or process either return.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any

---

[4]Petitioner described his "Principal business or profession" as "Author" on the Schedules C attached to his 2009 and 2010 returns and as "Computer Tech" on the Schedule C attached to his 2011 return.  Apparently, the 2011 Schedule C, like the 2009 and 2010 Schedules C, relates to petitioner's book writing activity despite the misnomer.

[5]The parties stipulated that petitioner's book writing activity did not have any gross receipts for 2010 or 2011.

claimed deduction.[6]  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976); <u>Meneguzzo v. Commissioner</u>, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

<u>Dependency Exemption Deductions</u>

According to petitioner, he is entitled to a dependency exemption deduction for Mr. Abney for each of 2009 and 2010.  Respondent contends that petitioner did not establish that he provided more than one-half of Mr. Abney's support and, therefore, he is not entitled to a dependency exemption deduction for Mr. Abney for 2009 or 2010.

A taxpayer is entitled to a dependency exemption deduction only if the claimed dependent is a "qualifying child" or a "qualifying relative" as defined under section 152(c) and (d).  Sec. 152(a).  A qualifying child is defined as the

---

[6]Petitioner does not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

taxpayer's child, brother, sister, stepbrother, stepsister, or a descendant of any of them. Sec. 152(c)(1) and (2). The term "child" includes a legally adopted individual and a foster child placed in the care of the taxpayer by an authorized placement agency or by a court order. Sec. 152(f)(1). Mr. Abney is not a qualifying child because he is not related to petitioner and is not an adopted child or a foster child.

An individual who is not a qualifying child may still, under certain conditions, qualify as a dependent if he or she is a qualifying relative. Sec. 152(a). Under section 152(d)(1), a qualifying relative is an individual: (A) who bears a qualifying relationship to the taxpayer; (B) whose gross income for the year is less than the section 151(d) exemption amount; (C) who receives over one-half of his or her support from the taxpayer for the taxable year; and (D) who is not a qualifying child of the taxpayer or of any other taxpayer for the taxable year.

Section 152(d)(2)(A)-(H) lists eight types of qualifying relationships, seven of which involve various familial relationships which do not apply to the circumstances herein. The eighth type of qualifying relationship applies to an individual, other than the taxpayer's spouse, who has the same principal place of abode as the taxpayer and is a member of the taxpayer's household for the taxable year. Sec. 152(d)(2)(H). In order for an individual to be considered a member of

a taxpayer's household, the taxpayer must maintain the household and both the taxpayer and the individual must occupy the household for the entire taxable year. Sec. 1.152-1(b), Income Tax Regs. A temporary absence from the household will not prevent an individual from being considered as living with the taxpayer for the entire year. Id. A taxpayer maintains a household when he or she pays more than one-half of the expenses for the household. See sec. 2(b); Rev. Rul. 64-41, 1964-1 C.B. (Part 1) 84, 85.

On the basis of petitioner's testimony and a notarized statement of Mrs. Ballard-Bey, the Court is satisfied that Mr. Abney resided with petitioner and had the same principal place of abode as petitioner during 2009 and 2010. See Rasco v. Commissioner, T.C. Memo. 1999-169. Petitioner paid rent and provided food for the home; there is no evidence of another source of maintenance of the household as defined in section 1.2-2(d), Income Tax Regs. The Court is further satisfied that no individual other than petitioner supported Mr. Abney and that Mr. Abney had no other source of income or support. Because Mr. Abney had no other source of income or support, we assume for purposes of the test that petitioner provided more than one-half of Mr. Abney's support as defined in section 1.152-1(a)(2), Income Tax Regs. See Halbin v. Commissioner, T.C. Memo. 2009-18. Mr. Abney was a contemporary of petitioner and over the age of

19 in 2009 and 2010 and thus could not be a qualifying child of another taxpayer. See sec. 152(c)(3). Thus, petitioner has satisfied section 152(d)(1)(A)-(D). Accordingly, petitioner is entitled to a dependency exemption deduction for Mr. Abney for 2009 and 2010.

Petitioner's Book Writing Activity Schedules C

According to petitioner, he is entitled to the deductions claimed on the 2010 and 2011 Schedules C relating to his book writing activity because those deductions represent expenses he paid in the operation of his book writing business.

Respondent contends that petitioner engaged in neither a trade or business within the meaning of section 162(a), nor an active trade or business within the meaning of section 195(c), during either of the years in issue. According to respondent, any expenditures relating to petitioner's book writing activity are nondeductible startup expenses under section 195(a). Respondent further argues that even if petitioner was engaged in an active trade or business, he failed to substantiate most of his Schedule C expenses.[7]

---

[7]According to respondent, petitioner has substantiated approximately $5,400 and $2,300 for 2010 and 2011, respectively, of his Schedule C expenses.

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid in connection with carrying on a trade or business. Section 212 generally allows a deduction for expenses paid or incurred in connection with an activity engaged in for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Under both provisions, however, expenses must be associated with a trade or business or other income-producing activity that is functioning at the time the expenses are incurred. Hardy v. Commissioner, 93 T.C. 684, 687-693 (1989), aff'd in part, remanded in part, 1990 U.S. App. LEXIS 19670 (10th Cir. Oct. 29, 1990); see also Woody v. Commissioner, T.C. Memo. 2009-93, aff'd, 403 Fed. Appx. 519 (D.C. Cir. 2010); Glotov v. Commissioner, T.C. Memo. 2007-147. A taxpayer is not carrying on a trade or business for section 162(a) purposes until the business is functioning as a going concern and performing the activities for which it was organized. Richmond Television Corp. v. United States, 345 F. 2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965); see also Glotov v. Commissioner, T.C. Memo. 2007-147. Business operations with respect to the activity must have actually commenced. McKelvey v. Commissioner, T.C. Memo. 2002-63, aff'd, 76 Fed. Appx. 806 (9th Cir. 2003). "Until that time, expenses related to that activity are not 'ordinary and necessary'

expenses currently deductible under section 162 (nor are they deductible under section 212) but rather are 'start-up' or 'pre-opening' expenses." Woody v. Commissioner, T.C. Memo. 2009-93 (citing Hardy v. Commissioner, 93 T.C. at 687-688). Startup expenses, although not currently deductible, may generally be deducted over time pursuant to section 195. Id.

Whether a taxpayer's activities constitute the carrying on of a trade or business requires an examination of the facts and circumstances of each case. Id.; see also Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987). The Court has focused on three factors to indicate the existence of a trade or business: (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. See Woody v. Commissioner, T.C. Memo. 2009-93.

Upon consideration of the evidence the Court concludes that petitioner undertook his book writing activity with the honest intent to generate a profit. Nonetheless, petitioner's profit-seeking activity was not functioning as a going concern in 2010 or 2011. Although it appears that petitioner took steps directed toward establishing an active book writing business, his plans to commence the book writing venture he described at trial were not realized by the end of 2011.

From 2009 through 2011 wrote an unpublished rough draft, developed a Web site platform from which he intended on selling his book once published and other related items, and consulted with various professionals in preparation of starting his business. At no point during either year in issue did petitioner, as his testimony confirms, ever offer any item for sale on his Web site or otherwise, nor did he as of the end of 2011, publish his book. Petitioner has not met his burden of showing that the startup phase was completed and that the profit seeking began in 2010 or 2011. Thus, the expenses relating to the book writing activity were not ordinary and necessary business expenses or section 212 expenses for the years in issue and are considered startup expenses that cannot be currently deducted.

## III. Accuracy-Related Penalties

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a) for each year in issue. Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on the portion of an underpayment attributable to any one of various factors, including negligence, disregard of rules or regulations, or substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Under section 7491(c),

respondent has the burden of production with respect to the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

For 2009 petitioner claimed Schedule C deductions of $23,643 that he has conceded in full. For 2010 petitioner claimed Schedule C deductions of $10,390 on his return as originally filed, and for 2011 petitioner claimed Schedule C deductions of $18,358. Petitioner substantiated approximately $5,400 and $2,300 for 2010 and 2011, respectively, of his Schedule C expenses. Respondent has met his burden.

That being so, it is petitioner's burden to establish that the imposition of the penalty is not appropriate. See id. at 447; see also Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 6664(c)(1) provides an exception to the section 6662(a) penalty if it is shown that there was reasonable cause for any portion of the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id. Circumstances that may indicate reasonable

cause and good faith include an honest misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education.  Id.

According to petitioner, the penalties are not applicable because he relied upon Mr. Wise to compute the Federal income tax liabilities shown on his returns. Under certain circumstances, a taxpayer's reliance upon professional advice may establish the taxpayer's "reasonable cause" and "good faith" with respect to an underpayment of tax if the taxpayer establishes that (1) the professional was provided with complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayer demonstrates good-faith reliance on a competent professional.  See Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000); see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Reliance on a return preparer is not reasonable where "even a cursory review" of the tax return would reveal errors.  Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).

Petitioner has not established that he provided Mr. Wise with complete and accurate information or that Mr. Wise was a competent professional.  Mr. Wise placed on the returns Schedule C and itemized deductions to which petitioner was

not entitled. Furthermore, petitioner admitted at trial that he approved the filing of the returns without reviewing them. Had he reviewed the returns, we are confident that petitioner would have noticed deductions for expenses that he did not incur. Accordingly, petitioner's reliance on Mr. Wise does not establish that he acted with reasonable cause and in good faith, nor has he advanced any other argument or evidence establishing that he acted with reasonable cause and in good faith. Therefore, the Court sustains respondent's determination that petitioner is liable for the section 6662(a) accuracy-related penalty for the years in issue.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.