T.C. Memo. 2009-93


UNITED STATES TAX COURT



THOMAS J. WOODY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 30077-07.                    Filed April 30, 2009.


        P alleges that during tax year 2004 he had a real
estate investment and rental business.  P deducted
expenses associated with this activity as business
expenses under I.R.C. sec. 162.  R disallowed the
business expense deductions.  On the basis of this
disallowance, R determined a deficiency in P's Federal
income tax for 2004.  P petitioned this Court for
redetermination of that deficiency.

        <u>Held</u>: P was not actively engaged in a real estate
investment and rental business when he incurred and
paid the expenses he deducted as Schedule C business
expenses in 2004.  Therefore, the costs P deducted are
pre-operational start-up expenditures and may not be
deducted as business expenses under I.R.C. sec. 162.

Bruce E. Gardner, for petitioner.

Scott L. Little, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge: This case is before the Court on petitioner Thomas J. Woody's petition for redetermination of his Federal income tax deficiency for 2004 which the Internal Revenue Service (IRS) determined to be $4,955. The issue for decision is whether Mr. Woody is entitled under section 162[1] to deductions claimed on his 2004 Schedule C, Profit or Loss From Business. As a threshold matter, we must decide whether Mr. Woody was actively engaged in the trade or business of real estate investment and rental at the time he incurred and paid the expenses that he reported as business expenses. We find that he was not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts filed October 16, 2008, and the attached exhibits are incorporated herein by this reference. At the time Mr. Woody filed his petition, he resided in Washington, D.C.

On or about February 15, 2004, Mr. Woody started investigating the real estate market so he could acquire real

---

[1]Unless otherwise indicated, all citations to sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations to Rules refer to the Tax Court Rules of Practice and Procedure.

estate for investment or rental. Throughout 2004 Mr. Woody looked at many properties he was interested in buying for this real estate investment and rental business. He made multiple offers to purchase properties but was out-bid on most of his offers. In May 2004 Mr. Woody entered into a contract to purchase a property on Bradley Avenue in Camden, New Jersey. However, after a home inspection revealed many defects in the property, Mr. Woody canceled the contract because the seller was not willing to make the needed repairs.

Mr. Woody did not purchase any investment or rental property until he purchased the property on Randolph Street in Camden, New Jersey, on December 30, 2004, i.e., the next to last day of the year at issue. At that time, there was no tenant in the property, and he did not secure a tenant until sometime after 2004. Furthermore, there is nothing in the record to indicate that Mr. Woody held the property out for rent in 2004.

Throughout 2004 Mr. Woody performed many other tasks in conjunction with his alleged business. He created a name for his endeavor--Value Property Investments--and began marketing his services via business cards, flyers, and word of mouth. In May 2004 Mr. Woody completed a business outline with "buying, remodeling, and renting property" being the stated purpose of Value Property Investments. On October 17, 2004, Mr. Woody paid $21,490 to the Wealth Intelligence Academy for certain training

classes, which he subsequently attended to acquire real estate investment skills. After Mr. Woody took the Wealth Intelligence Academy courses, his business plan shifted from merely buying, remodeling, and renting to also include what Mr. Woody referred to as "flipping" or "wholesaling".[2] However, he never consummated this type of transaction during 2004.

In November 2004 Mr. Woody applied, and was approved, for a loan from the U.S. Small Business Administration, and he obtained an employer identification number from the IRS. In December 2004 Mr. Woody obtained a credit card in the name of "Thomas J. Woody Value Property Invest" and opened a checking account in the name of "Mr. Thomas J. Woody D/B/A Value Property Investments".

Despite all of the foregoing activity, Mr. Woody did not purchase any investment property until December 30, 2004, and he did not buy or sell any other property, rent out any property, or hold any property out for rent, nor did he engage in "flipping" or "wholesaling" during tax year 2004.

For tax year 2004 Mr. Woody filed a Form 1040, U.S. Individual Income Tax Return, with an attached Schedule C. On that Schedule C Mr. Woody reported no gross receipts or sales but reported total expenses of $23,373, which consisted of:

---

[2]"Wholesaling" or "flipping" is entering into a contract for the purchase of a property and then, before the sale goes to closing, assigning to a third-party buyer (in return for a fee) the right to buy the property.

| | |
|---|---|
| Car and truck expenses | $144 |
| Supplies | 153 |
| Meals and entertainment | 41 |
| Workshops and training | 21,515 |
| Computer and software | 1,451 |
| Misc. | 69 |

Respondent now concedes that Mr. Woody incurred and paid all of the expenses set forth in his Schedule C (as listed above), and the parties stipulate that they were incurred and paid before December 29, 2004.[3] However, upon examination of Mr. Woody's 2004 tax return, the IRS disallowed Mr. Woody's Schedule C expenses on the grounds that he had failed to substantiate his expenses or to prove that they were "ordinary and necessary" to his business.

In the statutory notice of deficiency issued to Mr. Woody on October 9, 2007, the IRS determined an income tax deficiency of $4,955. Mr. Woody timely petitioned the Tax Court on December 27, 2007, for a redetermination of that deficiency. In response to Mr. Woody's petition, respondent answered:

---

[3]For most of these listed expenses, the record shows expressly that they were incurred before October 22, 2004, and there is no indication that any of them was incurred after that date. (For the relevance of that date, see infra note 7). At trial Mr. Woody presented additional evidence to establish that he paid an additional $1,887.82 in expenses that should have been included on his 2004 Schedule C. Three of those additional expenditures (a loan application fee of $475; an advertising expense of $114; and settlement charges of $874, totaling $1,463) were incurred after October 22, 2004. However, the $874 in settlement charges incurred with respect to the purchase of the Randolph Street property is a capital expenditure which is non-deductible in 2004. See sec. 263; sec. 1.263(a)-2(a), Income Tax Regs.

respondent determined that petitioner was not engaged in the active conduct of a real estate investment business as alleged. Further alleges, in any event, that petitioner has not substantiated the amount of, payment of, or the specifics of any such expenses.

Therefore, respondent's justification of his disallowance of Mr. Woody's expenses was in fact two-fold: (1) lack of substantiation of the expenses, and (2) the determination that Mr. Woody was not actively engaged in a trade or business as required by section 162.

A trial in this case was held on October 16, 2008, in Washington, D.C.

OPINION

I. The Parties' Contentions

Mr. Woody does not dispute that his initial investigation of properties (and the failed bids thereon) and his research into the real estate investment and rental business from February to April 2004 occurred before the commencement of his business. However, Mr. Woody contends that he commenced his real estate investment and rental business on May 1, 2004, when he entered into a contract of sale on the Bradley Avenue property in Camden, New Jersey (i.e., the contract he ultimately canceled).[4] As a

---

[4]Mr. Woody also makes much of the fact that since the contractual rights in relation to the existing tenant at the Bradley Avenue property would belong to him in the event that he acquired the property, that implies he offered that property for rent. However, because Mr. Woody never acquired the property, we cannot find that he ever had any legal ability to offer that

(continued...)

result, Mr. Woody maintains that all the expenses associated with his business that were incurred after May 1, 2004, should be deductible as business expenses under section 162.

Respondent asserts that Mr. Woody was not actively engaged in the real estate investment and rental business at any time during 2004, because Mr. Woody did not become actively engaged in business, i.e., by buying, selling, renting, or offering to rent property, until he held the Randolph Street property out for rent some time after 2004. As a result, since all of the Schedule C expenses were incurred and paid before December 30, 2004, i.e., before the acquisition of any potential rental property, respondent contends that none of Mr. Woody's Schedule C expenses are deductible under section 162.

II. Burden of Proof

At trial and on brief, Mr. Woody argued that the burden of proof on the question whether he was actively engaged in a trade or business when he incurred the expenses has shifted to respondent because respondent raised that issue as a "new matter"

---

⁴(...continued)
property for rent. In any event, such activity is not sufficient to rise to the level of carrying on a trade or business. See Johnsen v. Commissioner, 83 T.C. 103 (1984) (looking for or securing a tenant before the taxpayer actually owns the property and could actually rent the property was not sufficient to indicate the start of a business), revd. on other grounds 794 F.2d 1157 (6th Cir. 1986), overruled on other grounds Hardy v. Commissioner, 93 T.C. 684 (1989), affd. in part and remanded in part per order (10th Cir., Oct. 29, 1990).

in his answer.[5]  See Rule 142(a)(1).  The IRS's notice of deficiency stated that Mr. Woody "did not establish * * * that the expense was ordinary and necessary to your business".  Mr. Woody contends that this language did not raise the issue of whether he was engaged in the business.

However, in this case the allocation of the burden of proof does not affect the outcome, because the facts found here are essentially undisputed, and the parties disagree only on how to characterize them.  "[E]xcept for extraordinary burdens (e.g., in fraud cases), the burden of proof is merely a 'tie-breaker' * * * [and] is irrelevant unless the evidence is in equipoise." Steiner v. Commissioner, T.C. Memo. 1995-122, 69 T.C.M. (CCH) 2176, 2198 (1995), 1995 T.C.M. (RIA) par. 95,122.  On the basis of the stipulated facts and the evidence presented at trial, we do not find the evidence with respect to whether Mr. Woody was actively engaged in business to be in equipoise.  As a result, the question of who bears the burden of proof is one we need not reach.

---

[5]A new theory that is presented to sustain a deficiency is treated as a new matter when it increases the amount of the original deficiency or requires the presentation of different evidence.  Shea v. Commissioner, 112 T.C. 183, 191 (1999) (and cases cited thereat).  A new theory which merely clarifies or develops the original determination is not a new matter in respect of which the Commissioner bears the burden of proof. Id.

III. <u>Business Expense Deductions</u>

Section 162 generally allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  Such expenses must be directly connected with or pertain to the taxpayer's trade or business that is functioning as a business at the time the expenses were incurred.  <u>Hardy v. Commissioner</u>, 93 T.C. 684 (1989), affd. in part and remanded in part per order (10th Cir., Oct. 29, 1990); <u>Glotov v. Commissioner</u>, T.C. Memo. 2007-147; sec. 1.162-1(a), Income Tax Regs. (26 C.F.R.).  Whether an expenditure satisfies the requirements of section 162 is a question of fact. <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943).  And whether a taxpayer's activities constitute the carrying on of a trade or business requires an examination of the facts and circumstances of each case.  <u>Commissioner v. Groetzinger</u>, 480 U.S. 23, 36 (1987); <u>Higgins v. Commissioner</u>, 312 U.S. 212 (1941); <u>O'Donnell v. Commissioner</u>, 62 T.C. 781 (1974), affd. without published opinion 519 F.2d 1406 (7th Cir. 1975).

However, "A taxpayer is not carrying on a trade or business under section 162(a) until the business is functioning as a going concern and performing the activities for which it was organized." <u>Glotov v. Commissioner</u>, <u>supra</u>.  Until that time, expenses related to that activity are not "ordinary and necessary" expenses currently deductible under section 162 (nor

are they deductible under section 212) but rather are "start-up" or "pre-opening" expenses.  Hardy v. Commissioner, supra at 687-688.  "Start-up expenditures"--i.e., expenses incurred "before the day on which the active trade or business begins,"[6] sec. 195(c)(1)(A)(iii) (emphasis added)--may be deducted only over time under section 195.[7]

While all of Mr. Woody's 2004 expenditures at issue have been substantiated, the question for decision before the Court is whether they qualify as section 162 business expenses.  It is respondent's position that even though Mr. Woody incurred these expenses, they are, at best, start-up expenditures, as opposed to section 162 business expenses.  In determining whether these

---

[6]Where expenses are incurred in the same taxable year in which a business begins to function but before the day on which it begins to function, the disallowance of the deduction of such an expense under section 162 arguably constitutes an exception to the generality that our tax system is annualized.  Nonetheless, the deductibility of an expense under section 162--or its relegation to treatment under section 195--does depend on the date on which the expense was incurred in relation to the date on which the business began operating; and the expense is not deductible under section 162 unless the business was functioning on the day the expense was incurred.

[7]In his post-trial briefs, Mr. Woody acknowledges that he would be precluded from the special treatment afforded under section 195 because he failed to make the requisite election required by section 195(b). Even without such an election, a taxpayer might be entitled to section 195 amortization of expenses that were incurred after October 22, 2004, see sec. 1.195-1T(b), (d), Temporary Income Tax Regs., 73 Fed. Reg. 38913 (July 8, 2008); but only $1,463 of the expenses at issue here was incurred after that date, see supra note 3, and Mr. Woody has made no claim for section 195 treatment, so we do not here make any determination as to section 195 treatment.

expenses are in fact section 162 business expenses, the threshold question is when Mr. Woody completed his start-up phase and became actively engaged in his business.

Whether a taxpayer is engaged in a trade or business is determined using a facts and circumstances test under which courts have focused on the following three factors that indicate the existence of a trade or business:  (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. See McManus v. Commissioner, T.C. Memo. 1987-457, affd. without published opinion 865 F.2d 255 (4th Cir. 1988).  On the basis of Mr. Woody's testimony, we may assume that he undertook this activity to make a profit and that he regularly and actively engaged in it.[8]  However, it is the third factor--whether Mr. Woody's business had actually commenced--that is determinative here.

---

[8]Mr. Woody cites Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983), for the proposition that because Mr. Woody engaged in his activity for profit, he must have been actively engaged in business.  Mr. Woody's reliance on Dreicer is misplaced.  Dreicer deals exclusively with determining whether a taxpayer is engaged in an activity for profit.  However, whether a taxpayer is engaged in an activity for profit is not the decisive factor in determining whether he is actively engaged in a trade or business; rather it is just one of the three factors that needs to be satisfied.  See McManus v. Commissioner, T.C. Memo. 1987-457, affd. without published opinion 865 F.2d 255 (4th Cir. 1988).

In Mr. Woody's business outline, dated May 10, 2004, he indicated that he was starting Value Property Investments "for the purpose of buying, remodeling and renting property." Therefore, until Mr. Woody began to buy, remodel, or rent--i.e., to perform the activities for which Value Property Investments was organized--he was not carrying on a trade or business as contemplated by section 162.

We find that Mr. Woody's activities did not rise to the level of a trade or business until, at the earliest, the time he purchased the Randolph Street property on December 30 of the year in suit. More likely, Mr. Woody's activities did not rise to the level of a trade or business until he held the Randolph Street property out for rent sometime after the close of the year in suit. See Charlton v. Commissioner, 114 T.C. 333, 338 (2000) (holding that the mere purchase of property did not constitute an active trade or business since the property was not rented or held out for rent until a subsequent year).

Nonetheless, in order to resolve the matter before us, we do not need to decide whether Mr. Woody's business started at the time he purchased the Randolph Street property or at the time he held it out for rent, because, in any event, the expenses in question here all occurred before the purchase date, i.e., before

December 30, 2004.[9]  If the earliest possible date Mr. Woody was actively carrying on a trade or business was December 30, 2004, then any expenses incurred in that year but incurred "before the day on which the active trade or business" began, sec. 195(c)(1)(A)(iii)--i.e., all the expenses incurred from January 1 through December 29, 2004--would be, by definition, start-up expenses whose deductibility, and possible amortization, is expressly dealt with by section 195.  Since all the expenses at issue here were incurred between January 1 and December 29, 2004,[10] they would not be deductible for 2004 under section 162 because their timing makes them subject to the provisions of section 195, and section 195 start-up expenditures are not deductible under section 162.  See Hardy v. Commissioner, 93 T.C. 684 (1989).  Mr. Woody's largest expenditure in 2004--$21,515 for workshops and training--was an educational expense incurred to prepare for a new career, i.e., real estate investor and renter, rather than to maintain or improve skills in an ongoing business

---

[9]If Mr. Woody argued for section 195 treatment for the $1,463 portion of his 2004 expenses that was incurred after October 22, then it might be necessary to resolve the precise date on which he commenced his business (i.e., December 30, 1994, versus a later date in 2005).  However, as stated supra note 7, Mr. Woody has made no claim for section 195 treatment.

[10]The settlement expenses associated with the purchase of the Randolph Street property were incurred on December 30, 2004.  However, as stated supra note 3, the settlement charges are not deductible business expenses, but rather are capital expenditures.  See sec. 1.263(a)-2(a), Income Tax Regs.

or career.  It was therefore not deductible under section 162. See sec. 1.162-5, Income Tax Regs.

## Conclusion

Although we found Mr. Woody's testimony to be credible, it established that he was not actively carrying on a trade or business at the time that the expenses at issue were incurred. Mr. Woody's activities in 2004 were, at most, start-up activities, because he had not yet commenced the activities for which Value Property Investments was organized, i.e., buying, selling, renting, or offering to rent property, or even "flipping" or "wholesaling".  Accordingly, we hold that the IRS's disallowance of Mr. Woody's 2004 Schedule C deductions was proper.

To reflect the foregoing,

Decision will be entered under Rule 155.