**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-91

UNITED STATES TAX COURT

GALE JORDAN, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

LORA A. JARRETT, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3058-12S, 3059-12S.　　　　Filed November 18, 2013.

<u>Latif Oduola-Owoo</u>, for petitioners.

<u>Christopher D. Bradley</u>, for respondent.

SUMMARY OPINION

BUCH, <u>Judge</u>:  These cases were heard pursuant to section 7463 of the

Internal Revenue Code in effect when the petitions were filed.[1]  Pursuant to

―――――――――――――――――

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion may not be treated as precedent for any other case.

Respondent determined a deficiency of $900 in petitioner Gale Jordan's Federal income tax for 2008 and an accuracy-related penalty under section 6662(a) of $180. Respondent determined a deficiency of $3,385 in petitioner Lora A. Jarrett's Federal income tax for 2008 and an accuracy-related penalty under section 6662(a) of $677. The issues for decision are: (1) whether petitioners were carrying on a rental property business in 2008 and (2) whether petitioners are liable for the accuracy-related penalties. We find that the property was not placed in service in 2008 and thus petitioners may not deduct the expenses relating to the property for 2008. Further, petitioners are liable for their respective accuracy-related penalties.

## Background

At the time petitioners filed their petitions, they resided in Virginia. Petitioners purchased a single-family house in Virginia on August 25, 2008. Petitioner Gale Jordan made repairs of $3,500 and reported other expenses of $6,622 relating to the property on her 2008 Schedule E, Supplemental Income and

---

[1](...continued)
Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Loss. Petitioner Lora A. Jarrett made repairs of $5,064 and reported other expenses of $8,614 relating to the property on her 2008 Schedule E. Petitioners purchased the house with the intent to rent it, but it was not actually rented at any time in 2008.

Petitioners' sole rental applicant in 2008 applied to rent the house on July 16, 2008, which was before petitioners acquired it. However, petitioners did not check the 2008 applicant's creditworthiness until November 24, 2008. As a result of that credit check, petitioners determined they would not rent the house to the 2008 applicant.

Petitioners had a second rental applicant in 2009, a woman who applied to rent the house on January 30, 2009. The 2009 applicant was eligible for Section 8 housing assistance.[2] After the application, HUD sent an inspector, who stated that additional repairs to the house were required before the applicant could rent it. Petitioner Lora A. Jarrett testified at trial regarding the inspection, stating:

---

[2]The Section 8 housing program under the United States Housing Act of 1937 authorizes a private landlord who rents to a low-income tenant to receive assistance payments from the Department of Housing and Urban Development (HUD) in an amount calculated to make up the difference between the tenant's rent payments and the contract rent agreed upon by the landlord and HUD. See Cisneros v. Albine Ridge Grp., 508 U.S. 10, 12 (1993); see also 42 U.S.C. sec. 1437f (2006).

because it was Section 8, at the time that she put in her application and we thought it okay, Section 8 sent an inspector out, and we had a few additional things that we had to do before they would--took-- finally approved her application. So to us, yes, it was [ready for rent], until they came back and said, we need you to do these things. And we did them, and that's when she was able to move in.

The second applicant moved into the house in March 2009. Petitioners reported a placed-in-service date for the house of March 1, 2009, on their respective 2009 Forms 4562, Depreciation and Amortization.

On December 1, 2011, respondent issued a notice of deficiency to each petitioner determining that the house was not ready and available to rent in 2008 and thus the expenses petitioners incurred for the property should have been capitalized. As a result of that determination respondent recharacterized their claimed real estate tax payments and mortgage interest payments as itemized deductions. These adjustments also caused a computational adjustment to petitioner Lora A. Jarrett's recovery rebate credit. Additionally, respondent determined an accuracy-related penalty for each petitioner under section 6662(a). Petitioners timely filed petitions disputing respondent's determinations.

## Discussion

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid in connection with carrying on a trade or business. Section 212

generally allows a deduction for expenses paid or incurred in connection with an

activity engaged in for the production or collection of income or for the

management, conservation, or maintenance of property held for the production of

income.  Such expenses, however, must be associated with a trade or business or

other income-producing activity that is functioning at the time the expenses are

incurred.[3]  A taxpayer is not carrying on a trade or business for section 162(a)

purposes until the business is functioning as a going concern and performing the

activities for which it was organized.[4]  Business operations with respect to the

activity must have actually commenced.[5]  "Until that time, expenses related to that

activity are not 'ordinary and necessary' expenses currently deductible under

section 162 (nor are they deductible under section 212) but rather are 'start-up' or

---

[3]Hardy v. Commissioner, 93 T.C. 684, 687 (1989), aff'd in part, remanded in part, 1990 U.S. App. LEXIS 19670 (10th Cir. Oct. 29, 1990); see also Woody v. Commissioner, T.C. Memo. 2009-93, aff'd, 403 Fed. Appx. 519 (D.C. Cir. 2010); Glotov v. Commissioner, T.C. Memo. 2007-147.

[4]Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965); see also Glotov v. Commissioner, T.C. Memo. 2007-147.

[5]McKelvey v. Commissioner, T.C. Memo. 2002-63, aff'd, 76 Fed. Appx. 806 (9th Cir. 2003).

'pre-opening' expenses."[6]  Startup expenses, although not currently deductible, may generally be deducted over time pursuant to section 195.[7]

Whether a taxpayer's activities constitute the carrying on of a trade or business requires an examination of the facts and circumstances of each case.[8] The Court has focused on three factors to indicate the existence of a trade or business:  (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced.[9]

The parties have stipulated to the first factor.

With respect to the second factor, in 2008 petitioners were not yet regularly and actively involved in the activity.  Petitioners' activity was property rental.  To support the assertion that they were regularly and actively involved in holding out

---

[6]Woody v. Commissioner, T.C. Memo. 2009-93 (citing Hardy v. Commissioner, 93 T.C. at 687-688).

[7]Woody v. Commissioner, T.C. Memo. 2009-93.

[8]Woody v. Commissioner, T.C. Memo. 2009-93; see also Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987); Higgins v. Commissioner, 312 U.S. 212 (1941); O'Donnell v. Commissioner, 62 T.C. 781 (1974), aff'd without published opinion, 519 F.2d 1406 (7th Cir. 1975).

[9]See Woody v. Commissioner, T.C. Memo. 2009-93; see also McManus v. Commissioner, T.C. Memo. 1987-457, aff'd without published opinion, 865 F.2d 255 (4th Cir. 1988).

the house for rent in 2008, petitioners state that they engaged in word-of-mouth advertising throughout 2008. However, the only evidence of actively working to rent the property is the single 2008 rental application that was completed more than a month before petitioners owned the property. There is no evidence supporting any advertising in 2008 after petitioners purchased the house. Instead, the evidence reflects that petitioners did not attempt to rent the house immediately after they purchased it; rather, they made repairs to it. It appears the first time they turned their attention back to renting the house was November 24, 2008, when they checked the creditworthiness of the first applicant. Alternatively, the facts supporting petitioners' claim that they were regularly actively engaged in renting out the property in 2009 include the 2009 application, the communications with HUD for the Section 8 program, the HUD inspection, the additional repairs required and made, and the 2009 applicant's actually renting the house starting in March 2009.

The third factor requires that the activity has actually commenced. The mere purchase of a property is not enough if that property is not held out for rent or actually rented.[10] The fact that a taxpayer was looking for or secured a tenant before actually purchasing the property is not sufficient to indicate the start of a

_____

[10]Charlton v. Commissioner, 114 T.C. 333, 338 (2000).

business.[11] Therefore, petitioners' word-of-mouth advertising and solicitation of the 2008 application before they owned the house does not rise to the level of starting a business. A taxpayer is not carrying on a trade or business under section 162(a) until the business is functioning as a going concern and performing the activities for which it was organized.[12] Therefore, until the repairs are completed and the house is held out for rent or actually rented, petitioners' business is not functioning as a going concern. It is notable that HUD required additional repairs before it would agree that the house was suitable for rental by the 2009 applicant. From that, it is clear that the house was not ready to be occupied in 2008.

We also find it noteworthy that both petitioners reported a placed-in-service date for the house of March 1, 2009, on their 2009 Federal income tax returns.[13]

A review of the record reflects that petitioners were not regularly and actively involved in renting out the property in 2008. The activity did not commence until sometime in 2009, when the 2009 application was submitted,

---

[11]Johnsen v. Commissioner, 83 T.C. 103 (1984), rev'd on other grounds, 794 F.2d 1157 (6th Cir. 1986); Woody v. Commissioner, T.C. Memo. 2009-93.

[12]Richmond Television Corp. v. United States, 345 F.2d at 907; see also Golotov v. Commissioner, T.C. Memo. 2007-147.

[13]See Mendes v. Commissioner, 121 T.C. 308, 312 (2003) (finding that positions taken in a tax return signed by a taxpayer may be treated as admissions).

petitioners had dealings with HUD, the house was made suitable for occupancy, and the house was actually rented. Petitioners have not met their burden to show that the startup phase was completed and that the business began in 2008. Thus, the repairs and other expenses relating to the property were not ordinary and necessary business expenses for 2008 and are considered startup expenses that cannot be currently deducted.

Accuracy-related penalty

Section 6662(a) and (b)(1) imposes a 20% penalty on any portion of an underpayment that is attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code; the term "disregard" includes any careless, reckless, or intentional disregard.[14] Neither petitioner disputed the penalty in her petition or an amended petition. Rule 41(b) provides for issues to be tried by consent. Petitioners retained counsel for trial, but they did not raise the issue of penalties at trial. Therefore, each petitioner is liable for the accuracy-related penalty for 2008.[15]

---

[14]Sec. 6662(c).

[15]See Rule 34(b)(4).

## Conclusion

We conclude that the house was not placed in service in 2008; therefore, petitioners are not entitled to deduct expenses related to the house on their respective 2008 Schedules E.  Further, petitioners are liable for their respective accuracy-related penalties for 2008.

To reflect the foregoing,

<u>Decisions will be entered for</u>

<u>respondent</u>.