T.C. Summary Opinion 2016-42

UNITED STATES TAX COURT

JULIE A. TIZARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21904-15S.                    Filed August 15, 2016.

<u>Gregory A. Robinson</u>, for petitioner.

<u>Trisha S. Farrow</u> and <u>Doreen Marie Susi</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $5,114 in petitioner's Federal income tax for 2010. Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in Arizona.

After concessions,[2] the issue remaining for decision is whether petitioner is entitled to a deduction of $13,295 for a loss she sustained in 2010 in connection with an aviation activity and claimed on Schedule C, Profit or Loss From Business.[3]

---

[1](...continued)
Code, as amended and in effect for 2010, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]The parties agree that petitioner is entitled to an increased depreciation deduction of $4,690 in respect of a rental property and that she failed to include a State income tax refund of $2,930 in taxable income for the year in issue.

[3]Respondent acknowledges that petitioner has substantiated the expenses that she reported on Schedule C. To the extent not discussed herein, other issues are computational and flow from our decision in this case.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

I. Petitioner's Background

Petitioner is a veteran of the U.S. Air Force (USAF) and an accomplished aviator. She attended Baylor University where she enrolled in the USAF Reserve Officers' Training Corps. In 1977, after graduating from Baylor with a bachelor's degree in computer science, petitioner was commissioned as a second lieutenant. Shortly thereafter, while she was stationed at Wright-Patterson Air Force Base in Ohio, the USAF announced that women would be permitted to apply for pilot training opportunities. Intrigued by the idea of piloting an aircraft, petitioner obtained her private pilot's license, was accepted into the USAF's pilot training program in 1981, and graduated the following year.

During a span of nearly 12 years in active duty, petitioner rose through the USAF ranks and was assigned to various positions of increasing responsibility including instructor pilot, flight commander, commander of a KC-10 in-flight refueling aircraft, and wing flying safety officer. Along the way, she satisfactorily completed training as a USAF flight safety officer and was recognized by the USAF as an air training command master instructor. The USAF awarded

petitioner numerous commendations and awards, including two Meritorious Service Medals.

In 1990 petitioner accepted a position as a full-time commercial airline pilot at United Airlines (United) and left active military duty for the USAF Reserves. Petitioner continued her service in the USAF Reserves until she retired in 2009.

At the time of trial petitioner continued to serve as a captain for United. Her United duty station or "home base" is Los Angeles, California. In the 25 years she has worked for United, petitioner has piloted (on domestic and international flights) various aircraft, including Boeing models 737, 757, and 767 and the Airbus 320.

In accordance with Federal Aviation Administration (FAA) regulations, petitioner may not pilot an aircraft more than 100 hours per month. Petitioner spends 80 to 90 hours per month piloting aircraft for United.

Under current FAA rules petitioner will be obliged to retire as a commercial airline pilot at age 65.[4] In anticipation of that day, petitioner researched ways that she might continue to earn income after her retirement. Eventually, she decided to purchase a military training aircraft and start an aviation business in Arizona.

---

[4]In 2008 the FAA raised the mandatory retirement age for commercial airline pilots from age 60 to 65. At the time of trial petitioner was 61 years old.

## II. Tizard Aviation, LLC (Tizard)

### A. The Firefly

Petitioner concluded that a Slingsby T-67C "Firefly" military training aircraft (Firefly) would allow her to provide a variety of aviation services. The Firefly, manufactured in England, is constructed of fiberglass and is powered by a single engine and propeller. The aircraft provides seating for a pilot and one passenger and offers a small cargo space. Petitioner selected the Firefly primarily because it is fuel efficient, provides excellent visibility through the canopy to perform aerial photography, and is "responsive" and aerobatic (e.g., it can withstand spins and stalls), making it well suited for flight instruction and "upset recovery" training.

### B. Petitioner's Activities in 2010

In 2010 petitioner traveled around the country looking for a suitable Firefly to purchase. She found what she was looking for at an aircraft museum in Florida--a Firefly that was manufactured in 1992 and that had previously been used by the Canadian Air Force as a training aircraft. She negotiated the purchase of the Firefly with Guy Derby, a real estate developer and member of the museum's board of directors. On October 6, 2010, after taking an aircraft evaluation flight, petitioner purchased the Firefly for $52,000. She also paid

$2,200 for additional equipment for the Firefly, including a portable global positioning navigation system, a Bose aviation headset, and a portable radio.

While petitioner was negotiating the purchase of the Firefly with Mr. Derby, she learned that he might be interested in hiring her to provide aerial land survey services in Phoenix in connection with his real estate development activities. Although petitioner stated that she had a "verbal agreement" with Mr. Derby, she acknowledged that he never actually hired her to provide aviation services.

On October 13, 2010, petitioner filed articles of organization for Tizard with the State of Arizona. Petitioner is Tizard's sole member and employee.

On October 15, 2010, petitioner posted on Facebook a picture of herself standing in front of the Firefly with the following statement: "Hi All, I now have my own airplane! This is one of my life's dreams come true. She is fast, responsive and gorgeous. This is a two seat T-67 plane [that] was built in England and flew as a primary trainer in the Canadian Air Force." In response to the post, petitioner received about 25 positive comments and about 50 "likes" from her 230 Facebook "followers".

On October 27, 2010, petitioner piloted the Firefly twice in Naples, Florida, including a final aircraft acceptance flight. She subsequently hired a pilot to deliver the Firefly to Phoenix.

On November 15, 2010, the Firefly was delivered to petitioner at the Glendale Municipal Airport in Glendale, Arizona. That same day petitioner took Diana Clark, an acquaintance who she considered a potential client, for what she characterized as an "incentive orientation flight" in the Firefly. The flight lasted about 80 minutes. Although petitioner prepared an invoice for this flight, she did not charge Ms. Clark. Shortly thereafter, Ms. Clark moved to California, and petitioner never developed a business relationship with her.

Petitioner piloted the Firefly on one other occasion in November for about one hour and once in December for about 1.5 hours.

C. Business Plan

In early October 2010 petitioner drafted a business plan. The plan stated that Tizard would begin operations by offering aerial land surveys, flight charters, and aviation photography services to the general public in central Arizona and professional aviation and aeronautical safety consulting services for corporate, airline, and general aviation needs. Petitioner planned to eventually expand operations to include specialized flight training in upset recovery for general aviation pilots.[5]

_____

[5]In 2010 petitioner was not certified by the FAA as a general aviation flight instructor.

As mentioned above, petitioner considered the Firefly to be well suited for aerial land survey work and aviation photography services because the canopy provides excellent visibility. Petitioner explained that she planned to use the Firefly to take aerial photographs of clients piloting their own aircraft by positioning the Firefly in "fingertip formation" (i.e., three feet off the wing tip and at the same altitude and speed) with the client's aircraft. To provide this service, petitioner acknowledged she would have to recruit a friend willing to take photographs while she piloted the Firefly. Petitioner also believed the Firefly was well suited for charter flights because it was engineered to take off and land on a runway as short as 3,000 feet. Petitioner thought that the services Tizard offered were not otherwise available in central Arizona.

Petitioner estimated that Tizard's fixed monthly expenses would total approximately $580, including hangar rental charges, fuel expenses, insurance premiums, and maintenance costs. She calculated that she would be able to break even if she provided 2.5 hours of aviation services at $250 per flight hour per month. To achieve meaningful profits, petitioner aimed to provide 15 hours of aviation services per month.

## III.  Petitioner's Federal Income Tax Return for 2010

Petitioner filed a timely Form 1040, U.S. Individual Income Tax Return, for 2010, reporting wages of $154,218 that she earned at United.  She attached to her tax return a Schedule C reporting that Tizard had no gross receipts and expenses totaling $13,295.  Petitioner reported the resulting loss on line 12 of her tax return.

## IV.  Tizard's Facebook Page

Sometime in 2011 petitioner created a Facebook page for Tizard.  The page was subsequently the target of electronic hackers, and petitioner closed it.  It appears that petitioner did not relaunch Tizard's Facebook page until 2014.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a)(1), the burden of proof may shift from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability.  Petitioner has not alleged that section 7491 applies, nor did she introduce the requisite evidence to invoke that section.  Therefore, the burden of proof remains on petitioner.

As noted above, respondent does not dispute that petitioner has substantiated the expenses that she reported in respect of the aviation activity on Schedule C. Respondent contends, however, that petitioner is not entitled to a deduction for those expenses for taxable year 2010 because she was not "carrying on" a trade or business within the meaning of section 162(a) during that year. According to respondent, the expenses claimed are, at best, nondeductible startup expenditures.

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred in connection with carrying on a trade or business. Whether a taxpayer's activities constitute the carrying on of a trade or business requires an examination of the facts and circumstances of each case. Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987).

To qualify for deduction under section 162 or 212, expenses must be associated with a trade or business or other income-producing activity that is functioning as a going concern. See Woody v. Commissioner, T.C. Memo. 2009-93, aff'd, 403 F. App'x 519 (D.C. Cir. 2010); Glotov v. Commissioner, T.C. Memo. 2007-147; Walsh v. Commissioner, T.C. Memo. 1988-242, aff'd without published opinion, 884 F.2d 1393 (6th Cir. 1989). Although a taxpayer may be committed to entering into a business and invest considerable time and money in

preparing to do so, the activity does not constitute a trade or business for section 162(a) purposes until the business is actually functioning and performing the activities for which it was organized.  Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965); see also Glotov v. Commissioner, T.C. Memo. 2007-147. Business operations with respect to the activity must have actually commenced. See McKelvey v. Commissioner, T.C. Memo. 2002-63, aff'd, 76 F. App'x 806 (9th Cir. 2003).  "Until that time, expenses related to that activity are not 'ordinary and necessary' expenses currently deductible under section 162 (nor are they deductible under section 212) but rather are 'start-up' or 'pre-opening' expenses." Woody v. Commissioner, T.C. Memo. 2009-93, slip op. at 9-10.

Section 195(a) provides the general rule that no current deduction shall be allowed for startup or preopening expenses.  Section 195(c)(1) defines "start-up expenditures" as:

(1) * * * any amount--

(A) paid or incurred in connection with--

(i) investigating the creation or acquisition of an active trade or business, or

(ii) creating an active trade or business, or

(iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and

(B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

Startup expenses, although not currently deductible, may generally be deducted over time pursuant to section 195. Woody v. Commissioner, T.C. Memo. 2009-93.

The Court found petitioner's testimony to be credible and forthright. We are persuaded that she fully intended to enter into an aviation business for profit, and she committed substantial time and money to that endeavor in 2010. On the record presented, however, we cannot say that petitioner's activities had ripened into an active trade or business in 2010.

In 2010 petitioner acquired the Firefly and arranged to have it delivered to Glendale, drafted a business plan, and filed articles of organization for Tizard. These were all steps preparatory to beginning her aviation business. However, other than the picture and short statement (that makes no mention of her aviation business) that she posted on her personal Facebook page in early October 2010,

petitioner did nothing in 2010 to formally advertise to the general public (either by way of print or electronic media) that Tizard was open for business or describe and promote the various services that Tizard would offer to its clients. Petitioner's informal efforts to promote Tizard's services, her optimism that Mr. Derby might become a paying client, and the complimentary flight that she provided to Ms. Clark do not impress the Court as evidence that Tizard was actually functioning and performing the activities for which it was organized. In 2010 Tizard had no clients, no contracts for aviation services, and no gross receipts.

Considering all the facts and circumstances, we conclude that petitioner was not carrying on an aviation-related trade or business in 2010. Consequently, we sustain respondent's determination disallowing a deduction for the loss that petitioner claimed in respect of her aviation activity.

To reflect the foregoing,

Decision will be entered under

Rule 155.