T.C. Summary Opinion 2019-3

UNITED STATES TAX COURT

ROSEMARY MCDOWELL AND ADRIC MCDOWELL, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 973-17S.                    Filed March 4, 2019.

Rosemary McDowell and Adric McDowell, pro sese.

<u>Jacob Russin</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Special Trial Judge</u>: This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the
Internal Revenue Code in effect for the year in issue, and all Rule references are to
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated December 27, 2016, respondent determined a deficiency of $12,695 in petitioners' 2014 Federal income tax and a section 6662(a) accuracy-related penalty of $2,539. After concessions,[2] the issues for decision are whether petitioners are entitled to deduct on Schedule C, Profit or Loss From Business: (1) other expenses totaling $63,551,[3] (2) travel expenses of $4,954, and (3) a $50,000 expense for a "DC license".

## Background

Some of the facts have been stipulated and are so found. The record consists of the stipulation of facts with attached exhibits, exhibits introduced at trial, and the testimony of Rosemary McDowell (hereinafter, petitioner).

---

[1](...continued) the Tax Court Rules of Practice and Procedure. We round some monetary amounts to the nearest dollar.

[2]Respondent conceded the sec. 6662(a) accuracy-related penalty in a response filed February 8, 2018. Respondent's adjustment of a mortgage interest deduction for 2014 claimed on petitioners' Schedule A, Itemized Deductions, was computational and is not discussed here.

[3]In petitioners' amendment to petition discussed infra pp. 11-16, petitioners requested an adjustment to their Schedule C other expenses, resulting in a revised total of $36,551.

Petitioners resided in Virginia when the petition was timely filed. The facts in the record are somewhat incomplete, because of a limited narrative provided by petitioners.

I.      Petitioners' Business Activity and Employment

During the tax year in issue petitioner Adric McDowell worked as a systems engineer. Petitioner operated a sole proprietorship during the years 2000 through 2014 consulting with small businesses to assist them in seeking Federal Government contracts. By 2013 petitioner's consulting business had diminished because of a change in Government policy that negatively affected her small business clients' ability to win contracts. While looking for new consulting opportunities in 2013, petitioner attended a PowerTeam International (PTI) seminar in Chicago, Illinois, and decided to restructure her consulting business around PTI concepts. PTI appears to be a business education network marketing program that offers speaker training and other business coaching.

In March 2014 petitioners attended a PTI training session called "Rainmaker". At this training petitioner was approached about attending a four day speaker training camp (speaker camp). Petitioner was also asked to purchase a Washington, D.C., area "license" (DC license) that would allow her to recruit other local entrepreneurs to the PTI program in exchange for a percentage of any

program fees collected.  Petitioner attended a speaker camp in 2014, as well as several other PTI training sessions.  Petitioner also attended or presented at approximately 260 separate networking events.  At each event petitioner gave an eight minute speech that she had developed at speaker camp.  Petitioner also answered questions in an attempt to sell PTI program packages.  Most of the meetings petitioner attended appear to have been held at private offices, restaurants, or networking clubs.  Petitioner also attended a weekly lunch meeting with the Northern Virginia Networking Club, monthly meetings of the Sterling Women's Club and Executive Women International, and meetings with the Executive Women Roundtable (petitioner's networking organizations).  Additionally, petitioner paid sponsorship fees to be recognized on the programs of certain networking meetings.

Petitioner sold one package in 2014 and five packages in 2015.  However, petitioner did not sell enough packages to cover expenditures.  Petitioner abandoned the PTI activity at the end of 2015 because of poor sales combined with personal medical problems.

II.    Petitioner's Business Expenses and Records

Petitioner maintained a log of her PTI and contracting expenses on a laptop computer. Petitioner lost a large amount of data in a computer crash, including many of her business records from tax year 2014. Consequently, petitioners did not have all of their business records when they prepared their return.

In 2016, in conjunction with the IRS audit of their 2014 tax return, petitioner created an Excel spreadsheet (spreadsheet) detailing her 2014 business expenses. Petitioner did not have all of her records available while creating the spreadsheet. At trial petitioner presented the spreadsheet to the Court but provided numerous purported corrections to the data based on additional records from 2014 she had found the day before trial.

Petitioners also presented 2014 bank statements from Apple Federal Credit Union and Navy Federal Credit Union, as well as petitioners' 2014 credit card statements from Capital One bank, to substantiate the Schedule C expenses. Petitioners presented a multitude of receipts and business emails. Although petitioners used these accounts to pay for some expenses related to the PTI activity, it appears that most of petitioner's Schedule C other expenses and travel expenses were paid with her American Express card. The monthly American Express statements are not part of this record.

III.     Petitioners' Tax Return and Respondent's Adjustments

Petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for tax year 2014.  Petitioners reported gross receipts of $6,250 from the consulting business on Schedule C.  Respondent disallowed deductions for petitioners' Schedule C other expenses ($63,551) and Schedule C travel expenses ($4,954) as claimed on their return.  Respondent determined that petitioners failed to substantiate the claimed deductions.

On February 10, 2017, petitioners filed an amendment to petition providing updated Schedule C-7 travel information for tax year 2014 and reporting $5,462.21 in travel expenses.  Petitioners did not provide substantiation for the travel expenses reported.  Additionally, the amendment to petition admitted an error in petitioner's reported Schedule C other expenses, reducing the $42,000 originally reported for training expenses to $15,000.  The amendment to petition also reported an additional $50,000 in expenses related to the DC license.

## Discussion

I.     Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

(1933).  Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances.  Petitioners have not asserted or otherwise shown that section 7491(a) applies.  See sec. 7491(a)(2)(A) and (B).  Therefore, petitioners bear the burden of proof.

## II.    Trade or Business

Section 162(a) generally allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  In general no deduction is permitted for personal, living, or family expenses.  Sec. 262(a).  The taxpayer bears the burden of proving that expenses were of a business nature rather than personal and that they were ordinary and necessary.  Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

A prerequisite to claiming deductions under section 162 is that the expenses directly relate to an active trade or business at the time the expenses were incurred. Glotov v. Commissioner, T.C. Memo. 2007-147.  A taxpayer is not carrying on a trade or business for section 162(a) purposes until the business is functioning as a going concern and performing the activities for which it was organized. Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965),

vacated and remanded on other grounds, 382 U.S. 68 (1965); see also Glotov v.

Commissioner, T.C. Memo. 2007-147.[4]

Whether a taxpayer's activities constitute the carrying on of a trade or

business requires an examination of the facts and circumstances of the case. See

Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987); see also Woody v.

Commissioner, T.C. Memo. 2009-93, slip op. at 9-10, aff'd, 403 F. App'x 519

(D.C. Cir. 2010). When determining whether a trade or business exists the Court

focuses on three factors: (1) whether the taxpayer undertook the activity intending

to earn a profit, (2) whether the taxpayer is regularly and actively involved in the

---

[4]In order for an activity to qualify as a trade or business, business operations with respect to the activity must have actually commenced. See McKelvey v. Commissioner, T.C. Memo. 2002-63, aff'd, 76 F. App'x 806 (9th Cir. 2003). "Until that time, expenses related to that activity are not 'ordinary and necessary' expenses currently deductible under section 162 * * * but rather are 'start-up' or 'pre-opening' expenses." See Woody v. Commissioner, T.C. Memo. 2009-93, slip op. at 9-10 (quoting Hardy v. Commissioner, 93 T.C. 684, 687-688 (1989), aff'd in part, remanded in part, 1990 U.S. App. Lexis 19670 (10th Cir. Oct. 29, 1990)), aff'd, 403 F. App'x 519 (D.C. Cir. 2010). Startup expenses, although not deductible during the preopening phase, may generally be deducted or capitalized and deducted over time upon a taxpayer's becoming actively engaged in business pursuant to sec. 195. Sec. 1.195-1, Income Tax Regs. Petitioners maintain that their business expenses were not startup expenses and that petitioner's business activity in 2014 should not be classified as a startup. Petitioners also did not make a sec. 195(b) election to have their business expense deductions classified as startup expenditures. Because the Court will treat petitioner's consulting activity as an active trade or business during the relevant tax year, see infra pp. 9-10, sec. 195 does not apply. See sec. 195(b), (d).

activity, and (3) whether the taxpayer's activity has actually commenced. Woody v. Commissioner, slip op. at 11. The taxpayer's activity need not have generated revenue but "it must nonetheless have started to function in a particular and identifiable line of work." Bailey v. Commissioner, T.C. Memo. 2012-96, slip op. at 102 (quoting Weaver v. Commissioner, T.C. Memo. 2004-108, slip op. at 16), aff'd, 2014 WL 1422580 (1st Cir. Mar. 14, 2014).

The facts surrounding petitioner's activity and the respective positions of the parties relating to whether petitioner was engaged in a trade or business are not entirely clear. At trial petitioner appeared to concede that the PTI activity was not a trade or business in 2014. The Court understood this as petitioner's concession, and the parties appeared to agree that any deduction for the PTI activity in 2014 would be governed by the provisions for startup activities. Despite these concessions, petitioners in a posttrial memorandum indicated that at least some of the reported income and reported expenses in 2014 related to her ongoing consulting activity which constituted a trade or business. Petitioner asserts that her management consulting business operated from 2000 through 2015. She further asserts that PTI is simply a part of or a continuum of her existing trade or business.

Petitioner's records of her consulting activity, including the PTI activity, were disorganized and incomplete. Petitioner's testimony was vague and sometimes inconsistent. However, respondent did not seriously dispute that petitioner's consulting and PTI activity constituted a trade or business in 2014, and accordingly the Court proceeds to treat the activity as such and considers the issue of whether some of the expense deductions claimed constitute ordinary and necessary business expenses and, if so, whether they have been substantiated.

III.    Claimed Expense Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he or she is entitled to any deduction claimed. Thus, the taxpayer is required to maintain records sufficient to substantiate expenses underlying deductions claimed on his or her return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). If the taxpayer is able to establish that he paid or incurred a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Business expenses specified in section 274 are subject to rules of substantiation that supersede the Cohan test. See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1986), aff'd, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) applies to certain business expenses including, among other things, expenses for gifts, listed property, and travel (including meals and lodging while away from home). To substantiate a deduction attributable to travel expenses, a taxpayer must maintain adequate records or present corroborative evidence of the taxpayer's own statement to show the following for each expense: (1) the amount, (2) the time, (3) the place, and (4) the business purpose. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015. To substantiate a deduction attributable to "listed properties", such as cars and computers, a taxpayer must maintain adequate records or present corroborative evidence of the taxpayer's own statement to show the following for each expense: (1) the expenditure amount and the percentage of business versus personal use, (2) the time, and (3) the business or investment purpose. Id. subpara. (6), 50 Fed. Reg. 46016.

A.     Schedule C--Other Expenses

Petitioners reported the following Schedule C other expenses on the 2014

tax return and in the revisions shown in the amendment to petition:

| Schedule C other expenses | Amount claimed on return | Changes in amendment to petition |
|---|---|---|
| Medical | $5,761 | --- |
| Meetings | 3,988 | --- |
| Training | 42,000 | $15,000 |
| Subscriptions | 10,182 | --- |
| Office phone | 456 | --- |
| Postage | 252 | --- |
| Services | 460 | --- |
| Software | 452 | --- |
| Total | 63,551 | 36,551 |

1.     Medical Expenses

Petitioners have conceded that the $5,761 in medical expenses reported on

their Schedule C were improperly characterized as business expenses and are not

deductible.  We sustain respondent's disallowance of the medical expense

deductions.

### 2. Meeting Expenses

Petitioner testified that she attended approximately 260 different networking and business meeting events in 2014. Petitioner reported $3,988 of expenses relating to meetings she attended. Petitioner provided some documentation regarding these meetings but did not provide evidence that specific meetings or meeting expenses were ordinary and necessary business expenses. On the basis of petitioner's testimony and documents, the Court is unable to distinguish the extent to which the meetings served a business purpose versus a personal purpose. Therefore, petitioner failed to establish a clear nexus between the multiple meetings she attended and the business purpose. We sustain respondent's disallowance of the meeting expense deductions.

### 3. Training Expenses

Petitioner testified that the $42,000 originally reported on petitioners' Schedule C under "Training" included both PTI trainings and initial payments towards the DC license. In the amendment to petition, petitioners reported a downward adjustment to the training expenses. Petitioners provided bank account statements showing cumulative payments of $6,000 directly to PTI and $29,908 to petitioners' American Express account, for a total of $35,908 allegedly paid towards PTI activity. Petitioner testified that a portion of the American Express

payments was related to her training activities; however, petitioners did not provide any further substantiation in the form of American Express account receipts. Petitioners provided a single receipt for $3,000 paid on March 18, 2014, to PTI via credit card for speaker camp. The Court is satisfied that petitioner has substantiated $9,000 in expenses and that such expenses were ordinary and necessary for her PTI activity related to training in 2014. Respondent is sustained in the balance of the disallowance of the training expense deductions.

### 4. Subscription Expenses

Petitioners reported $10,182 in "subscription" expenses. Petitioner's spreadsheet indicates that these expenses are related to alleged payments for business software, online tools, newspaper subscriptions, and professional dues at petitioner's networking organizations. As shown on the spreadsheet, the reported subscriptions also include $1,660 in alleged payments to the Tower Club in Vienna, Virginia. Petitioner testified that the Tower Club was a private club where, as a member, she was allowed to host her networking meetings for free. Petitioner's alleged subscription fees also include a variety of publication subscriptions including Consumer Reports and the New York Times, as well as payments for a GoDaddy domain name for the Rotary Club of Fairfax County. Petitioner alleges that she made payments to Infusionsoft software related to her

PTI activity but did not provide substantiation regarding the payments beyond spreadsheet entries.  Petitioner has not established that any of her reported subscription expenses were ordinary and necessary to her business operations.  Consequently, we sustain respondent's determination denying a deduction for her reported subscription expenses.

### 5.    Remaining Other Expenses

Petitioner claimed expense deductions of $456 for an office telephone.  At trial she testified that the office telephone charges were for her cellular telephone.[5]  Petitioner further testified that after reviewing her records she incurred amounts greater than those reported.  On her spreadsheet she reflects $1,756.13 in cellular telephone payments.  However, she provided only one cellular telephone receipt to corroborate the spreadsheet, reflecting a payment of $97.07 on April 5, 2014.  The receipt is inconsistent with the data on petitioner's spreadsheet, which lists a payment of $88.62 on April 7, 2014.  On the basis of the receipt in the record, the Court is satisfied that petitioner has substantiated $1,164.84 in cellular telephone expenses for tax year 2014, calculated on 12 monthly payments of $97.07, and that

---

[5]As of January 1, 2010, cellular telephones and other similar personal telecommunications devices are no longer considered listed property.  See sec. 280F(d)(4).

the cellular telephone expenses were ordinary and necessary for her business activity.

The Court is satisfied that the remaining $1,164 in postage, services, and software expenses was ordinary and necessary for petitioner's business activity in the year indicated.[6]

B.    Schedule C--Travel Expenses

Petitioner traveled in 2014, attending seminars and conferences related to her PTI activity. Petitioner reported a total of $4,954 in travel expenses on her Schedule C related to business activities. In the amended petition, petitioner provided updated information for her Schedule C and revised her reported travel expenses to $5,462.21. Petitioner did not supply documentation or substantiation for any of the trips listed on her revised Schedule C-7. Instead, she provided documentation for a number of alternative hotel fees and airline fares. In one case petitioner's substantiation directly contradicted the revised Schedule C-7 data. In that instance she supplied a receipt from a hotel in Blacksburg, Virginia, for January 31 through February 1, 2014, dates which she had claimed she was in Tampa, Florida, attending small business training for Government contracting.

---

[6]To the extent these expenses are subject to the strict substantiation requirements of sec. 274(d), we are satisfied that petitioner has satisfied the requirements of that section.

With respect to the claimed travel expense deductions on the 2014 Schedule C, petitioner did not substantiate the expenses or satisfy the substantiation requirements of section 274(d). Therefore, the Court sustains respondent's disallowance of all claimed travel expense deductions.

C.     DC License

In the amendment to petition, petitioners reported an additional $50,000 in expenses for the DC license. To substantiate this claim, petitioners provided both an order form for the DC license and a receipt from PTI reflecting a total of $15,000 paid via American Express.

Section 197 provides for the recovery of the acquisition cost of certain intangibles amortized ratably over a fixed 15-year period. Sec. 197(a). An amortizable section 197 intangible may not be depreciated or amortized on any other basis. Sec. 1.197-2(a)(1), Income Tax Regs. Section 197 intangibles include goodwill, information bases, franchises, and trade names, among others. Sec. 197(d)(1). Amortization begins in the later of the month in which the intangible was acquired or the month in which the active conduct of the trade or business began. Sec. 1.197-2(f)(1)(i), Income Tax Regs.; see also Broz v. Commissioner, 137 T.C. 46, 69 (2011). Petitioner's DC license appears to be akin to a franchise agreement, allowing her to use the PTI name and branding within

the Washington, D.C., area in exchange for a portion of the profits from selling PTI packages.  On the basis of these facts the parties can compute the amortization allowable under section 197 for the $15,000 paid for the DC license, amortized from the date of the three substantiated payments made in $5,000 installments on March 28, May 28, and June 14, respectively.  See sec. 1.197-2(f)(1)(i), Income Tax Regs.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.